# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SIGNODE INDUSTRIAL GROUP LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 2:24-cv-00080-JRG |
| SAMUEL, SON & CO., LTD. and SAMUEL, SON & CO. (USA) INC. d/b/a SAMUEL PACKAGING SYSTEMS GROUP and SAMUEL STRAPPING SYSTEMS, | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANTS SAMUEL, SON & CO., LTD.'S AND SAMUEL, SON & CO. (USA) INC.'S MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a)

4895-3369-0574

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND...................................................................................2

   A.   Both Parties Lack Any Significant Relationship to This District, and
        Instead Have Significant Ties to N.D. Ill...................................................2

        1.   Samuel has no meaningful relevant ties to this District, but has
             significant relevant ties to N.D. Ill...............................................2

        2.   Signode has no meaningful ties to this District, but has significant
             relevant ties to N.D. Ill..................................................................4

   B.   No Known Relevant Non-Party Witnesses Reside in This District, while
        Several Non-Party Witnesses Reside in N.D. Ill. .....................................5

III.  LEGAL STANDARDS ...........................................................................................6

IV.   ARGUMENT ..........................................................................................................7

   A.   This Lawsuit Could Have Been Filed in N.D. Ill. .....................................7

   B.   The Private Interest Factors Favor Transfer to N.D. Ill............................7

        1.   Sources of proof are more accessible from N.D. Ill. ....................7

        2.   Witness convenience and cost of attendance favors N.D. Ill.....10

        3.   Compulsory process is more available from N.D. Ill. ................12

        4.   No other practical problems resulting from transfer...................13

   C.   The Public Interest Favor Transfer to N.D. Ill.........................................13

        1.   N.D. Ill. has a strong interest in this lawsuit. .............................13

        2.   The remaining public interest factors. ........................................15

   D.   The Private and Public Interest Factors Weigh Strongly in Favor of
        Transfer. .....................................................................................................15

V.    CONCLUSION......................................................................................................15

4895-3369-0574

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*,
   321 F.2d 53 (5th Cir. 1963) ................................................................................ 6

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).................................................................. passim

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)........................................................................ 14

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009).......................................................................... 6

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ........................................................................... 13

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)........................................................................ 15

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ............................................................................. 6

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................................. 8

**Other Cases**

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*, 2:17-cv-00513, 2018 U.S. Dist. LEXIS
   86382 at *19 (E.D. Tex. May 23, 2018) ........................................................... 12

*Farmobile LLC v. Farmers Edge Inc.*,
   No. 2:21-cv-00411, 2022 U.S. Dist. LEXIS 120370 (E.D. Tex. July 7, 2022) ...................... 10

*Geotag, Inc. v. Classified Ventures, LLC,* 2:11-cv-426, 2013 U.S. Dist. LEXIS 209383, at *4
   (E.D. Tex. Jan. 14, 2013) ......................................................................... passim

*Kranos IP Corp. v. Riddell, Inc.*, Civil Action,
   No. 2:17-cv-443-JRG, 2017 U.S. Dist. LEXIS 138108 (E.D. Tex. Aug. 28, 2017) ......... passim

*Maz Encryption Techs. v. Blackberry Ltd.*, 6:15-cv-1167 RWS-JDL, 2016 U.S. Dist. LEXIS
   199674, at *10-13 (E.D. Tex. July 14, 2016) ..................................................... 11

4895-3369-0574

*Phil-Insul Corp. v. Reward Wall Sys.*,
    No. 6:11cv53 LED-JDL, 2012 U.S. Dist. LEXIS 114493 (E.D. Tex. Feb. 10, 2012) ............ 11

*Quest NetTech Corp. v. Apple, Inc.,* 2:19-cv-00118, 2019 U.S. Dist. LEXIS 206019, at *13 (E.D.
    Tex. Nov. 27, 2019) ........................................................................................................ 13

*Unicorn Energy GMBH v. Tesla, Inc.,* 2:20-cv-00338, 2021 U.S. Dist. LEXIS 167381, at *3-6
    (E.D. Tex. Sept. 3, 2021) ................................................................................................ 10

*United States ex rel. Ferguson v. Lockheed Martin Corp.,* 4:20-cv-097, 2023 U.S. Dist. LEXIS
    224624, at *21 (E.D. Tex. Dec. 18, 2023) ...................................................................... 14

## Federal Statutes

28 U.S.C. § 1391(c)(3) ............................................................................................................ 7

28 U.S.C. § 1404(a) ...................................................................................................... passim

28 U.S.C. § 1331 ..................................................................................................................... 7

28 U.S.C. § 1338(a) ............................................................................................................... 7

28 U.S.C. § 1391 ..................................................................................................................... 7

28 U.S.C. § 1400(b) ............................................................................................................... 7

## Federal Rules

FRCP 45(c)(1)(A)-(B) ........................................................................................................... 12

4895-3369-0574

I.      **INTRODUCTION**

Defendants Samuel, Son & Co., Ltd. ("Samuel Canada") and Samuel, Son & Co. (USA) Inc. ("Samuel USA") (collectively "Samuel") hereby respectfully move the Court, pursuant to 28 U.S.C. § 1404(a), to transfer this lawsuit to the Northern District of Illinois ("N.D. Ill."), a much more convenient forum for this dispute compared to the Eastern District of Texas ("this District").

Regarding private interests, both parties have very strong connections to N.D. Ill. where the vast majority of the relevant evidence and witnesses reside, as compared to the relatively nominal connections to this District where no witnesses reside. Specifically, (1) the lion's share of documents and physical evidence relating to the research, design, development, operation, marketing, sale, and finances of Samuel's STL-500 strapping device (the "Accused Product"), as well as most of the relevant witnesses having knowledge of the same, are located in and/or work regularly in N.D. Ill.; (2) it will be markedly more convenient and less expensive for multiple party and non-party witnesses to attend trial in N.D. Ill.; (3) multiple relevant non-party witnesses are located in N.D. Ill. and are therefore subject to that jurisdiction's subpoena power, while no relevant non-party witnesses have been identified as subject to this District's subpoena power; and (4) there are no practical problems presented by transferring this case to N.D. Ill. Plaintiff has no apparent connection to this District specific to this case, and Samuel's minor sales location in this District does not entail any unique evidence or witnesses relevant to this case.

Regarding public interests, N.D. Ill. has a strong interest because Samuel USA is headquartered there, the Accused Product was designed and developed there, and all but one of the witnesses involved in the research, design, and development of the Accused Product remain located there. Of the remaining public interest factors, only time-to-trial arguably slightly disfavors transfer, but this alone cannot outweigh the remaining factors. This motion should be granted.

4895-3369-0574

## II.    FACTUAL BACKGROUND

### A.    Both Parties Lack Any Significant Relationship to This District, and Instead Have Significant Ties to N.D. Ill.

#### 1.    Samuel has no meaningful relevant ties to this District, but has significant relevant ties to N.D. Ill.

Founded in Canada in 1855, Samuel is a leading metals and industrial products manufacturer. Declaration of Traci Chapple ("Chapple Decl.") ¶3. In 1963, Samuel created a packaging division that manufactures a broad range of strapping, hand tools, and unitizing equipment. *Id*. Today, Samuel USA, a Delaware corporation headquartered in Woodridge, IL, employs over 200 people in Illinois. *Id*. ¶4. Samuel USA's packaging division, located at its headquarters, is one of the company's largest businesses. *Id*.; s*ee* https://www.samuel.com/about-samuel/our-history.

Samuel USA manufactures the Accused Product at Samuel USA's headquarters in Woodridge, IL.[1] *Id*. ¶6. The design and development of the Accused Product occurred in Woodridge, IL, and at DiMonte Group Inc., a product design and engineering firm located in Warrenville, IL. *Id*. The following current Samuel employees have knowledge relating to the research, design, development, operation, sales, and marketing of the Accused Product:

- Traci Chapple, Product Design Manager at Samuel USA, has knowledge about the design, development, operation, and marketing of the Accused Product. *Id*. ¶12. She works and resides in N.D. Ill. Declaration of Michael Houston ("Houston Decl.") ¶2.

- Dan Collins, Vice President, Sales at Samuel USA, has knowledge about sales of the Accused Product. Chapple Decl. ¶10. He works and resides in N.D. Ill. Houston Decl. ¶3.

- Terry Evans, Vice President, Commercial Development, Technical Sales & Service – National Sales & Marketing at Samuel USA, knowledge of historical facts, development, and sale of the Accused Product. Chapple Decl. ¶9. Resides

---

[1] Samuel Canada, a Canadian company headquartered in Ontario, Canada, provides relatively minor sales, marketing, and oversight support for Samuel USA's STL-500 product. *Id*. ¶7.

in Ontario, Canada but travels to N.D. Ill. regularly for work. Houston Decl. ¶4.

- <u>Luis Ponte</u>, President of Samuel Packaging Division as of 2023, has knowledge of historical facts, sales, and development of the Accused Product. Chapple Decl. ¶11. He resides in Ontario, Canada but travels to N.D. Ill. regularly for work. Houston Decl. ¶5.

- <u>Steve Snyder</u>, Vice President, Marketing & Communications at Samuel Canada, has knowledge about marketing of the Accused Product. Chapple Decl. ¶13. He resides in Ontario, Canada. Houston Decl. ¶6.

- <u>Tashinga Mawema</u>, Digital Strategist at Samuel Canada, has knowledge about marketing of the Accused Product. Chapple Decl. ¶14. He resides in Ontario, Canada. Houston Decl. ¶7.

A former Samuel employee currently living in Illinois also helped with design and development:

- <u>David VonderHaar</u>, former Director, Engineering, Innovation & Equipment Technology at Samuel Packaging Systems Group, has knowledge about the design, development, operation, and marketing of the Accused Product. Chapple Decl. ¶15. He resides N.D. Ill. Houston Decl. ¶8.

In sum, the current and former Samuel employees who researched and designed the Accused Product reside in N.D. Ill. The Samuel employees having knowledge of the general development, marketing and sales of the Accused Product reside in N.D. Ill., or in or near Ontario, Canada, with some traveling regularly to N.D. Ill. for work. Regarding the Accused Product marketing and sales, the primary decision-making has historically been, and continues to be, based at Samuel USA's Woodridge, IL location, and with relatively minor involvement by Samuel Canada employees located in or near Ontario, Canada. Decl. Chapple Decl. ¶7.

Samuel does not have any employees in this District responsible for the research, design or development of the Accused Product. *Id.* ¶19. While Samuel has a regional sales and distribution center in Longview, TX, the employees there only have generalized knowledge relating to the marketing and sales of the Accused Product limited to supporting regional sales. *Id*. ¶¶19-20. None of Samuel's employees in this district are known or believed to have any particular or unique knowledge relevant to any of the issues in this lawsuit. *Id*.

4895-3369-0574

Documents relating to the research, design, development, testing, operation, marketing, and sales of the Accused Product are located in N.D. Ill. (as to any paper copies) or on a server in Canada. *Id*. ¶21. No research, design, development, or testing documents are located in this District, while any marketing or sales documents for the Accused Product located at the Longview facility are general in nature (e.g., product brochures) without providing any unique or non-cumulative information not located in Woodridge, IL at Samuel USA's headquarters. *Id*. ¶¶21-22.

### 2. Signode has no meaningful ties to this District, but has significant relevant ties to N.D. Ill.

Signode has no discernable connection with this District specific to this case. Signode is organized under the laws of Delaware and is headquartered in Florida. First Amended Complaint ("FAC"; Dkt. 20), ¶2. Signode's FAC does not identify any physical presence in this District. While Signode appears to maintain one place of business here (out of 124 worldwide locations (https://www.signode.com/en-us/locations/)), the available evidence indicates that its BXT3 tool (FAC, ¶25) was not designed or developed and is not manufactured in this District, but rather was designed and developed in Switzerland and Germany (Houston Decl. ¶9, Ex. 1), and is manufactured/provided by Orgapack in Switzerland (*Id*. ¶10, Ex. 2 at 2).

The FAC alleges infringement of three Signode patents: U.S. Patent No. 11,667,417, No. 11,667,418, and No. 11,932,430 (the "Asserted Patents"). FAC, ¶¶36, 47, 56. These patents collectively name four inventors, Flavio Finzo, Mirco Neeser, Dimitrios Takidis, and Andreas Keller (Dkt. Nos. 20-1 – 20-3), all residing in Switzerland (Houston Decl. ¶¶11-12, Exs. 3-4).

Signode's Initial and Additional Disclosures do not identify any relevant witnesses in this District. *Id*. ¶13, Ex. 5 at 4-5. Besides the named inventors (already discussed above), Signode's disclosures only identify one additional salesperson, who resides in Switzerland. *Id*. ¶¶13-14, Exs. 5-6. Thus, no witnesses meriting inclusion on Signode's Initial and Additional Disclosures are

4

located in this District, and no apparent relevant Signode documents are kept in this District.

In contrast, Signode has substantive ties to N.D. Ill. Signode was headquartered in Glenview, IL, until at least the end of 2021 before moving to Florida. *Id.* ¶15, Ex. 7. Despite that move, Signode recently opened its new global flagship facility in Roselle, IL, which is the new location for its Automation and Packaging Technologies division (believed to involve strapping tools) that was relocated from Glenview, IL. *Id.* ¶16, Ex. 8. Both locations are in N.D. Ill.

Based on available information, Signode has at least two current employees located in N.D. Ill. who have knowledge regarding the prosecution of and/or prior art to the Asserted Patents: (i) Kevin Cukierski, who helped prosecute one or more of the Asserted Patents (*Id.* ¶17, Ex. 9) and (ii) Jeffrey D. Termanas, a prior-art author (*Id.* ¶18, Ex. 10). In addition, Adam Masia, an outside attorney who helped prosecute one or more of the Asserted Patents, resides in N.D. Ill. *Id.* ¶19, Ex. 11. Thus, the evidence shows that Signode prosecuted the patents and developed prior art relevant to this lawsuit in N.D. Ill., suggesting that relevant witnesses, documents and physical evidence related to the prior art and the prosecution of the Asserted Patents are also likely located there.

**B.      No Known Relevant Non-Party Witnesses Reside in This District, while Several Non-Party Witnesses Reside in N.D. Ill.**

Several employees of the DiMonte Group were involved in the design and development of the Accused Product. Chapple Decl. ¶16. None reside in this District; two reside in N.D. Ill., and one former DiMonte employee, resides in Tennessee near Knoxville:

- <u>Michael A. Graef</u>, Principal Design Engineer at DiMonte Group, has knowledge about the design, development, and operation of the Accused Product. *Id.* ¶17. He resides in N.D. Ill. Houston Decl. ¶20.

- <u>Rebecca L. Hyma (fka "Rebecca Regan")</u>, Senior Industrial Designer at DiMonte Group, knowledge about the design, development, and operation of Accused Product. Chapple Decl. ¶17. Resides in N.D. Ill. Houston Decl. ¶21.

- <u>Nathan Mellas</u>, former Mechanical Design Engineer at DiMonte Group, has knowledge about the design, development, and operation of the Accused

5

Product. Chapple Decl. ¶17. Resides in Tennessee. Houston Decl. ¶22, Ex. 12. Thus, together with the ex-Samuel employee, Mr. VonderHaar, the non-party engineers primarily responsible for the design and development of the Accused Product all reside in N.D. Ill., with one exception for Mr. Mellas who resides closer to N.D. Ill. than to this District (*id.*).

Samuel's Initial and Additional Disclosures identify numerous additional non-party witnesses having knowledge regarding prior art to the Asserted Patents or their prosecution. *Id.* ¶56, Ex. 43 at 5-10. None reside in this District, six reside in N.D. Ill., seventeen reside in Europe, two reside in Asia, one each resides in Arizona, Florida, Massachusetts, and North Carolina, and five are unknown as to their residences. *Id.* ¶¶11-12, 19, 23-46; Exs. 3-4, 11, 13-35.

## III.   <u>LEGAL STANDARDS</u>

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). Courts perform a two-step inquiry to evaluate whether transfer is warranted. The court first determines "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). "Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case." *Kranos IP Corp. v. Riddell, Inc.*, Civil Action No. 2:17-cv-443-JRG, 2017 U.S. Dist. LEXIS 138108, at *24-25 (E.D. Tex. Aug. 28, 2017) (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).

A non-exhaustive list of private and public interest factors are considered in deciding a motion to transfer under § 1404(a). *Volkswagen I*, 371 F.3d at 203. The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory

process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

## IV.   <u>ARGUMENT</u>

### A.   **This Lawsuit Could Have Been Filed in N.D. Ill.**

Signode could have brought this lawsuit in N.D. Ill., which has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Samuel USA's headquarters and principal place of business is located in N.D. Ill. (Woodridge, IL) (Chapple Decl. ¶4), establishing personal jurisdiction over Samuel USA in N.D. Ill. based on its continuous and systematic contacts with the forum. For the same reasons, venue is proper in N.D. Ill. as to Samuel USA pursuant to 28 U.S.C. §§ 1391 and 1400(b), and because the Accused Product was/is designed, developed, and sold in N.D. Ill.

Samuel Canada is a Canadian corporation. *Id*. ¶3. N.D. Ill. has personal jurisdiction over Samuel Canada given its business relationship with Samuel USA relating to marketing and sales of the Accused Product that occur in N.D. Ill. and as the direct parent corporation of Samuel USA. *Id*. ¶7; Houston Decl. ¶55. Further, as a foreign corporation, venue as to Samuel Canada is proper in N.D. Ill. pursuant to 28 U.S.C. § 1391(c)(3).

### B.   **The Private Interest Factors Favor Transfer to N.D. Ill.**

#### 1.   **Sources of proof are more accessible from N.D. Ill.**

The relative ease of access to sources of proof strongly favors transfer to N.D. Ill. This factor "pertains to where documentary evidence, such as documents and physical evidence, is stored." *Kranos*, 2017 U.S. Dist. LEXIS 138108 at *26. Regarding documents maintained in

electronic format, "the Fifth Circuit has made clear that the fact that 'access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.'" *Id*. at *28 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("*Volkswagen II*")). Thus, this factor is treated equally with the remaining factors. *Id*. at n.11. "This factor weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district." *Geotag, Inc. v. Classified Ventures, LLC*, No. 2:11-cv-426, 2013 U.S. Dist. LEXIS 209383, at *4 (E.D. Tex. Jan. 14, 2013). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

While Samuel's server is located in Canada (Houston Decl. ¶57), the paper documents relating to the research, design, development, testing, operation, marketing, and sales of the Accused Product reside at Samuel USA's headquarters in Woodridge, Illinois, within the N.D. Ill. Chapple Decl. ¶21. Samuel also manufactures the Accused Product and has prototypes and physical samples there. *Id*. ¶6. Further, the DiMonte Group was involved in the research, design, development, and testing of the Accused Product, and is located in Warrenville, IL, along with its relevant documents. *Id*. ¶16. In contrast to the extensive documentary evidence and witnesses present in N.D. Ill., Samuel does not maintain documents relevant to the design, development, or manufacture of the Accused Product in this District. *Id*. ¶21.

No unique, non-cumulative sales-related documents exist in this District. *Id*. ¶¶21-22. Further, to the extent that any documents or other physical evidence from Canada are needed for trial, Ontario is much closer to Illinois than to Texas (Houston Decl. ¶¶48-49, Exs. 36-37), making this evidence more readily accessible from N.D. Ill. *See Kranos*, 2017 U.S. Dist. LEXIS 138108

at *29-30 (rejecting plaintiff's argument regarding financial documents stored in Ohio rather than Illinois because "Ohio is closer to Illinois but is a considerable distance from Texas").

There is no evidence suggesting that Signode maintains any unique documents or physical evidence relevant to this lawsuit in this District; instead, the available information indicates that the bulk of Signode's relevant evidence is located in N.D. Ill and Switzerland. While Signode is now headquartered in Florida (FAC, ¶2), its Automation and Packaging Technologies division, which is believed to encompass research and development for strapping tools, has historically been and is currently located in N.D. Ill. Houston Decl. ¶16, Ex. 8. As one example, U.S. Patent Pub. No. US 2012/0210682, assigned to Signode (*id.* ¶50, Ex. 38), discloses a fully-automated hand-held strapping tool similar to the devices claimed in the Asserted Patents, and names three inventors. The face of the document indicates that all three were located in N.D. Ill. (*id.*), with two (Joseph Gardner and Timothy Pearson) still located in N.D. Ill. (*id.* ¶¶23-24, Exs. 13-14). Because highly relevant prior art was developed by Signode in N.D. Ill., it is likely that relevant documents and other physical evidence are located in N.D. Ill. as well. To the extent Signode keeps some relevant documents at its headquarters in Tampa, FL, or at its location(s) in Switzerland, the distance from Tampa and Switzerland to the N.D. Ill. courthouse is not materially different than to this District's courthouse. *Id.* ¶¶ 51-52, Exs. 39-40.

Thus, because 1) Samuel's relevant documents reside primarily in N.D. Ill.; 2) Samuel does not maintain any unique documents or evidence in this District; 3) Signode's relevant documents are likely housed in N.D. Ill., Florida, and Switzerland; and 4) there is no apparent indication Signode maintains documents or physical evidence in this District, this factor weighs heavily in favor of transfer to N.D. Ill. *See Geotag*, 2013 U.S. Dist. LEXIS 209383 at *6-7 (finding this factor favors transfer even though plaintiff had strong ties to transferor district because the bulk of

defendant's evidence was more easily accessed from the transferee district). This Court's transfer decisions are consistent. *See, e.g.*, *Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-cv-00411, 2022 U.S. Dist. LEXIS 120370, at *6-9 (E.D. Tex. July 7, 2022) (transferring where majority of identified documents and sources of proof were located in transferee district); *Kranos*, 2017 U.S. Dist. LEXIS 138108 at *26-30, 38 (same); *Unicorn Energy GMBH v. Tesla, Inc.*, No. 2:20-cv-00338, 2021 U.S. Dist. LEXIS 167381, at *3-6 (E.D. Tex. Sept. 3, 2021) (same).

### 2.    Witness convenience and cost of attendance favors N.D. Ill.

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech,* 566 F.3d at 1343. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established the '100-mile' rule, which requires that '[w]hen the distance between an existing venue … and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *Id*. (citing *Volkswagen II*, 545 F.3d at 317). "In analyzing the cost of attendance of willing witnesses, courts consider the convenience of both party and non-party witnesses." *Geotag*, 2013 U.S. Dist. LEXIS 209383 at *9. Here, "the courthouse for the Eastern Division of the Northern District of Illinois and the courthouse for the Marshall Division of the Eastern District of Texas are greater than 100 miles apart. Thus, the Court must assess the inconvenience to witnesses of having to travel to one venue over the other." *Id*. at *10.

Samuel has identified at least four party witnesses and nine non-party witnesses residing in N.D. Ill. who have relevant information in this case (Houston Decl. ¶¶ 2-3, 17-18, Exs. 9-10):

| Witness Name | Party or Non-Party | Nature of Relevant Information |
| --- | --- | --- |
| Traci Chapple | Party (Samuel) | Design, development, marketing, sales, and finances of the Accused Product |

10

| Witness Name | Party or Non-Party | Nature of Relevant Information |
|---|---|---|
| Dan Collins | Party (Samuel) | Design, development, marketing, sales, and finances of the Accused Product |
| Kevin Cukierski | Party (Signode) | Prosecution of the Asserted Patents |
| Jeffrey D. Termanas | Party (Signode) | Prior art to the Asserted Patents |
| David Vonderhaar | Non-Party (Former Samuel) | Design, development, operation, and marketing of the Accused Product |
| Michael A. Graef | Non-party (DiMonte Group) | Design, development, and operation of the Accused Product |
| Rebecca L. Hyma | Non-party (DiMonte Group) | Design, development, and operation of the Accused Product |
| Joseph Gardner | Non-party | Prior art to the Asserted Patents |
| Timothy Pearson | Non-party | Prior art to the Asserted Patents |
| Jason R. Nasiatka | Non-party | Prior art to the Asserted Patents |
| William A. Bernard | Non-party | Prior art to the Asserted Patents |
| James A. Haberstroh | Non-party | Prior art to the Asserted Patents |
| Adam Masia | Non-party | Prosecution of the Accused Product |

Other party and non-party witnesses of interest reside in various locations, where N.D. Ill. is more convenient than this District. Samuel's four party witnesses who reside in Ontario, Canada (Mssrs. Evans, Ponte, Snyder, and Mawema), are markedly closer to N.D. Ill. than to this District, making traveling to N.D. Ill. much more convenient. *Id*. ¶¶48-49, Exs. 36-37; *see Phil-Insul Corp. v. Reward Wall Sys.*, No. 6:11cv53 LED-JDL, 2012 U.S. Dist. LEXIS 114493, at *9 (E.D. Tex. Feb. 10, 2012) (recognizing the far greater convenience for Canadian witnesses to travel to Nebraska versus Texas, and granting transfer where most of the defendants were Canadian, a defendant's presence in the transferee district created a domestic locus, and most of the identified witnesses and documents were in Canada or the transferee district); *Maz Encryption Techs. v. Blackberry Ltd.*, No. 6:15-cv-1167 RWS-JDL, 2016 U.S. Dist. LEXIS 199674, at *10-13 (E.D. Tex. July 14, 2016) (finding this factor weighs in favor of transfer to D. Del. where four witnesses

were located in Ontario, Canada).

Witnesses in Europe or Asia will be required to travel a significant distance regardless of where they testify, and the few witnesses in other states have little impact on the analysis. Importantly, no apparent party or non-party witnesses having unique information relevant to this case reside in this District or within 100 miles of the courthouse, or even in the state of Texas.

Significant weight should be given to the witnesses residing in N.D. Ill., strongly favoring transfer there. *See Genentech,* 566 F.3d at 1344-45 (finding that even where additional witnesses resided in Europe or other states, "because a substantial number of material witnesses reside[d] within the transferee venue and the state of California, and no witnesses reside[d] within the Eastern District of Texas, this factor [] weigh[s] substantially in favor of transfer.").

### 3.    Compulsory process is more available from N.D. Ill.

The availability of compulsory process to secure the attendance of witnesses favors transfer to N.D. Ill. "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Geotag*, 2013 U.S. Dist. LEXIS 209383 at *7. Federal district courts have the absolute power to compel attendance "within 100 miles of where the person resides, is employed, or regularly transacts business in person" and have trial subpoena power over a person "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." FRCP 45(c)(1)(A)-(B). When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor. *See AGIS Software Dev. LLC v. Huawei Device USA Inc.,* No. 2:17-cv-00513, 2018 U.S. Dist. LEXIS 86382 at *19 (E.D. Tex. May 23, 2018).

At least nine non-party witnesses reside in N.D. Ill. *See* Houston Decl. ¶¶8, 19-21, 23-27; Exs. 11, 13-17. Such non-party witnesses have highly relevant information relating to

noninfringement, invalidity, and alleged damages. They are important to Samuel's defense of this litigation, and Samuel can secure their attendance at trial only in N.D. Ill. By contrast, there are no known relevant non-party witnesses located in this District. Thus, this factor weighs heavily in favor of transfer. *See Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly."); *Geotag*, 2013 U.S. Dist. LEXIS 209383 at *7-9 (weighing factor in favor of transfer where N.D. Ill. had absolute subpoena power over a third-party witness but this District did not).

### 4.     No other practical problems resulting from transfer.

There are no practical problems presented by transferring this lawsuit to N.D. Ill. This factor "pertains to 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Kranos*, 2017 U.S. Dist. LEXIS 138108 at *33 (citing *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)). This factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118, 2019 U.S. Dist. LEXIS 206019, at *13 (E.D. Tex. Nov. 27, 2019). Transfer will make this lawsuit easier, more expeditious, and less expensive given the number of witnesses and the amount of evidence present in N.D. Ill. Further, this case is still in its infancy and the Parties and the Court have not expended a significant amount of resources. Thus, this factor weighs slightly in favor of transfer or is neutral. *Geotag*, 2013 U.S. Dist. LEXIS 209383 at *14 ("Since this case is still in its infancy, and because problems with judicial economy do not exist, this factor is neutral.").

### C.     The Public Interest Favor Transfer to N.D. Ill.

### 1.     N.D. Ill. has a strong interest in this lawsuit.

This factor considers the relationship between the dispute and the community from which the jury pool will be drawn, as "jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. "[I]f there

13

are significant connections between a particular venue and the events that give rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "Local interest [] arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community." *Geotag*, 2013 U.S. Dist. LEXIS 209383 at *16 (citing *In re Hoffmann-La Roche*, 587 F.3d at 1338.)

Samuel USA's principal place of business is in N.D. Ill. and the research, design, and development of the Accused Product occurred there. Chapple Decl. ¶¶4, 6. Samuel employs over 200 people in Illinois, and the Accused Product is manufactured there. *Id.* Further, DiMonte Group, who was involved with the design and development of the Accused Product, is also based in N.D. Ill. *Id.* ¶16. Signode's product development center has also historically been located and remains in N.D. Ill. Houston Decl. ¶16, Ex. 8; *see also id.* ¶50, Ex. 38. Thus, N.D. Ill. has a localized interest in this lawsuit. *See Hoffmann-La Roche*, 587 F.3d at 1336 (noting that a district had a localized interest where the accused product was developed and tested in the district and "the cause of action call[ed] into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"); *Kranos*, 2017 U.S. Dist. LEXIS 138108 at *36-37 (finding that this factor favors transfer because the defendant's principal place of business was in the transferee district and the research, design, and development of the accused products occurred there).

In contrast, this District does not have a strong localized interest in this lawsuit. Neither party has uniquely relevant facilities or employees within this District. *See United States ex rel. Ferguson v. Lockheed Martin Corp.*, Civil Action No. 4:20-cv-097, 2023 U.S. Dist. LEXIS 224624, at *21 (E.D. Tex. Dec. 18, 2023) (stating that a party's facility with "no connection to [the] case" "does not impact [this District's] local interest in this case"). This factor favors transfer.

### 2.    The remaining public interest factors.

The remaining public interest factors are neutral or slightly weigh against transfer. First, because the claims at issue arise under federal law, the courts' familiarity with the law factor is neutral. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). Second, there are no conflict-of-laws issues so this factor is also neutral. Lastly, the court congestion factor addresses "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347. The median time to trial has been approximately 20 months in this District and 44 months in N.D. Ill. for cases pending in the past five years. Houston Decl. ¶¶53-54, Exs. 41-42. However, this factor is the most speculative and "case-disposition statistics may not always tell the whole story." *In re Genentech*, 566 F.3d 1347. Thus, when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id*.

### D.    The Private and Public Interest Factors Weigh Strongly in Favor of Transfer.

Assessing all the private and public interest factors together, four weigh heavily in favor of transfer (including the convenience of the witnesses, which is "probably the single most important factor in transfer analysis" (*Genentech,* 566 F.3d at 1343)), only one factor arguably weighs slightly against transfer, and the remaining factors are either neutral or weigh slightly in favor of transfer. N.D. Ill. is therefore a "clearly more convenient forum" for this lawsuit.

## V.    **CONCLUSION**

For the foregoing reasons, Samuel respectfully requests that the Court transfer this lawsuit to the Northern District of Illinois.

Dated: August 13, 2024                              Respectfully submitted,

                                                                    */s/ Michael R. Houston*

Case 2:24-cv-00080-JRG   Document 41   Filed 08/13/24   Page 20 of 21 PageID #:  441

Michael R. Houston (IL Bar No. 6286431)
Pavan K. Agarwal (D.C. Bar No. 459614)
Tiffany K. Sung (CA Bar No. 323077)
Gabriella M. Salek (IL Bar No. 6342686)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4378
Facsimile: (312) 832-4700
Email: mhouston@foley.com
        pagarwal@foley.com
        tsung@foley.com
        gsalek@foley.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Attorneys for Defendants*

16

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for Plaintiff regarding the substance of the relief requested herein. No agreement could be reached. The parties are at an impasse on these issues, leaving an open issue for the court to resolve. Counsel for Defendants complied with the meet and confer requirement in Local Rule CV-7(h), and this motion is opposed.

*/s/ Melissa R. Smith*
_____
Melissa R. Smith

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 13th day of August 2024.

*/s/ Melissa R. Smith*
_____
Melissa R. Smith

4895-3369-0574