**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| SIGNODE INDUSTRIAL GROUP LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMUEL, SON & CO., LTD. and SAMUEL, SON & CO. (USA) INC. d/b/a SAMUEL PACKAGING SYSTEMS GROUP and SAMUEL STRAPPING SYSTEMS,<br><br>　　　　　Defendants. | Civil Action No. 2:24-cv-00080-JRG<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS SAMUEL, SON & CO., LTD. AND SAMUEL, SON & CO. (USA) INC.
D/B/A SAMUEL PACKAGING SYSTEMS GROUP'S AND SAMUEL STRAPPING
SYSTEMS'S FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT (DKT. 20)**

Defendants Samuel, Son & Co., Ltd. ("**Samuel Canada**") and Samuel, Son & Co. (USA) ("**Samuel USA**") Inc. d/b/a Samuel Packaging Systems Group and Samuel Strapping Systems (together, "**Samuel**"), by and through its undersigned counsel, hereby submits this First Amended Answer and these Defenses to the First Amended Complaint ("FAC") filed by Signode Industrial Group LLC ("**Plaintiff**" or "**Signode**"). To the extent not specifically admitted herein, the allegations of the FAC are denied. Samuel denies any allegations that may be implied by the headings of the FAC.

## INTRODUCTION

1.　This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271, based on Samuel's infringement of U.S. Patent Nos.

11,667,417 ("the '417 Patent") and 11,667,418 ("the '418 Patent"), and 11,932,430 ("the '430 Patent") (collectively, "the Asserted Patents").

**ANSWER:**    The allegations of Paragraph 1 state a legal conclusion to which no answer is required. To the extent an answer is required, Samuel admits that the FAC purports to assert claims arising under the patent laws of the United States, Title 35 of the United States Code, based on alleged infringement of certain claims of the '417 Patent, the '418 Patent, and the '430 Patent but denies that Signode's claims have any merit or that Samuel infringed any valid patent claim. In all other respects, these allegations are denied.

## THE PARTIES

2.    Plaintiff Signode is a Delaware limited liability company with its principal place of business at Hidden River Corporate Center Two, 14025 Riveredge Drive, Suite 500, Tampa, Florida, 33637.

**ANSWER:**    Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 2 and on that basis denies the same.

3.    Defendant Samuel Canada is a Canadian corporation with its principal place of business at 1900 Ironoak Way, Oakville, Ontario, Canada.

**ANSWER:**    Samuel admits that Samuel Canada is a Canadian corporation with a principal place of business at 1900 Ironoak Way, Oakville, ON L6H 0N1.  Any remaining allegations of Paragraph 3 are denied.

4.    Defendant Samuel USA is a Delaware corporation with its principal place of business at 1401 Davey Road, Suite 300, Woodridge, IL, 60517. Samuel USA does business under the names Samuel Packaging Systems Group and Samuel Strapping Systems.

**ANSWER:**   Samuel admits that Samuel USA is a Delaware corporation with a principal place of business at 1401 Davey Road, Suite 300, Woodridge, IL, 60517. Samuel USA does business under the name Samuel Packaging Systems Group.  Any remaining allegations of Paragraph 4 are denied.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the United States patent laws, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

**ANSWER:**   The allegations of Paragraph 5 state a legal conclusion to which no answer is required. To the extent an answer is required, Samuel admits that this Court has jurisdiction over the subject matter of the claims under 28 U.S.C. §§ 1331 and 1338(a) to the extent the FAC purports to state claims for patent infringement arising under 35 U.S.C. § 271. In all other respects, these allegations are denied.

6.    This Court has personal jurisdiction over Samuel because, as detailed below: Samuel has done and continues to do business in Texas, Samuel has committed acts within this District giving rise to this action, and Samuel has recruited residents of this District for employment. Samuel has established minimum contacts with this forum such that the exercise of jurisdiction over Samuel would not offend traditional notions of fair play and substantial justice.

**ANSWER:**   Samuel admits that Samuel USA does business in Texas and employs residents of Texas. Samuel Canada denies that it has done or continues to do business in Texas or employs residents of Texas.  Samuel denies that it has committed any acts of infringement in this District or elsewhere as alleged in the FAC.  The remaining allegations of Paragraph 6 state legal

conclusions to which no answer is required. To the extent an answer is required, any remaining allegations of Paragraph 6 are denied.

7.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1391, 1400(b) because, as detailed below, Samuel has a regular and established place of business in this District and has committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Asserted Patents.

**ANSWER:**     The allegations of Paragraph 7 state a legal conclusion to which no answer is required. To the extent an answer is required, solely for purposes of this litigation, Samuel admits that Samuel USA has a place of business with an address located in this District. Samuel Canada denies that it has a regular and established place of business in this District. Samuel denies that it has committed any acts of infringement in this District or elsewhere as alleged in the FAC or that it infringes the Asserted Patents.  Any remaining allegations of Paragraph 7 are denied. Samuel further denies the allegations of this paragraph on the basis that this district is not a convenient forum for addressing the claims raised in the FAC, especially where the Federal District Court for the Northern District of Illinois would be a much more convenient forum to address the claims raised in the FAC.

8.      Samuel owns a sales and distribution center in this District at 623 Fisher Road, Longview, Texas 75604.

**ANSWER:**     Samuel admits that Samuel USA owns and operates a business location at 623 Fisher Road, Longview, Texas 75604.  Samuel denies that any STL-500 products (the "Accused Products") are sold or distributed from this location.  To the extent there are any remaining allegations in Paragraph 8, these allegations are denied.

4

9.      The following image depicts the exterior of Samuel's regular and established place of business in Longview, Texas.



**ANSWER:**     Samuel admits that the image above appears to depict the exterior of Samuel USA's location at 623 Fisher Road, Longview, Texas 75604. To the extent there are any remaining allegations in Paragraph 9, these allegations are denied.

10.     Gregg County Property records indicate that Samuel USA owns this property.



5

**ANSWER:** Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 10 and on that basis denies the same.

11. On information and belief, Samuel's Longview facility employs sales personnel and serves as a warehouse and distribution center for Samuel's strapping tools. For example, brochures of various Samuel strapping tools are available at the Longview facility.



**ANSWER:** Samuel admits that Samuel USA employs some sales personnel at Samuel USA's Longview, TX facility responsible for selling various kinds of products, and that some brochures are available at Samuel USA's location in Longview, TX. Samuel denies that Samuel USA's business location in Longview, TX sells, offers for sale, warehouses, or distributes the Accused Products. Samuel further denies that any brochures for or relating to the Accused Products are available at Samuel USA's location in Longview, TX. Samuel denies any remaining allegations contained in Paragraph 11.

12. On information and belief, over 30 Samuel employees on LinkedIn purport to work in Texas, including in Longview, and that group includes sales representatives, field technicians,

warehouse supervisors, the equipment division operations manager, a regional manager, an accountant, purchasing assistants, and call center managers.

**ANSWER:**   Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 12 and on that basis denies the same.

13.    On information and belief, Samuel's Longview facility includes customer pick-up and receiving for orders and product deliveries.

**ANSWER:**   Samuel admits that Samuel USA's business location in Longview, TX includes customer pick-up and receiving for orders and product deliveries for certain types of products.  Samuel denies that Samuel USA's business location in Longview, TX includes customer pick-up and receiving for orders and product deliveries of any Accused Products. Samuel denies any remaining allegations in Paragraph 13.

14.    On information and belief, Samuel's accused STL-500 tool has been available at its Longview facility and is offered for sale and sold in this District through Samuel's website, www.samuelpackagingstore.com.

**ANSWER:**   Samuel denies that the STL-500 tool has been available, is offered for sale, or is sold at Samuel USA's location in Longview, TX.  Samuel admits that the STL-500 tool is offered for sale on Samuel USA's website, www.samuelpackagingstore.com.  To the extent there are any remaining allegations in Paragraph 14, these allegations are denied.

## THE ASSERTED PATENTS

15.    The United States Patent and Trademark Office issued the '417 Patent, entitled "Strapping Device Having a Pivotable Rocker," on June 6, 2023.

**ANSWER:**   Samuel admits that the face of the '417 Patent shows a title of "Strapping Device Having a Pivotable Rocker" and issuance date of June 6, 2023.  To the extent there are any

remaining allegations in Paragraph 15, Samuel lacks knowledge sufficient to confirm or deny such allegations and on that basis denies the same.

16.     Signode lawfully owns the '417 Patent, and a true and correct copy of the '417 Patent is attached as Exhibit "A."

**ANSWER:**    Samuel admits that Signode Industrial Group LLC is listed as the assignee on the face of the '417 Patent. Samuel also admits that what purports to be a copy of the '417 Patent is attached as Exhibit A to the Complaint.  To the extent there are any remaining allegations in Paragraph 16, Samuel lacks knowledge sufficient to confirm or deny such allegations and on that basis denies the same.

17.     The United States Patent and Trademark Office issued the '418 Patent, entitled "Strapping Apparatus," on June 6, 2023.

**ANSWER:**    Samuel admits that the face of the '418 Patent shows a title of "Strapping Apparatus" and an issuance date of June 6, 2023.  To the extent there are any remaining allegations in Paragraph 17, Samuel lacks knowledge sufficient to confirm or deny such allegations and on that basis denies the same.

18.     Signode lawfully owns the '418 Patent, and a true and correct copy of the '418 Patent is attached as Exhibit "B."

**ANSWER:**    Samuel admits that Signode Industrial Group LLC is listed as the assignee on the face of the '418 Patent. Samuel also admits that what purports to be a copy of the '418 Patent is attached as Exhibit B to the Complaint.  To the extent there are any remaining allegations in Paragraph 18, Samuel lacks knowledge sufficient to confirm or deny such allegations and on that basis denies the same.

19.    The United States Patent and Trademark Office issued the '430 Patent, entitled "Strapping Device Having a Pivotable Rocker," on March 19, 2024.

**ANSWER:**    Samuel admits that the face of the '430 Patent shows a title of "Strapping Device Having a Pivotable Rocker" and an issuance date of March 19, 2024.  To the extent there are any remaining allegations in Paragraph 19, Samuel lacks knowledge sufficient to confirm or deny such allegations and on that basis denies the same.

20.    Signode lawfully owns the '430 Patent, and a true and correct copy of the '430 Patent is attached as Exhibit "C."

**ANSWER:**    Samuel admits that Signode Industrial Group LLC is listed as the assignee on the face of the '430 Patent. Samuel also admits that what purports to be a copy of the '430 Patent is attached as Exhibit C to the Complaint.  To the extent there are any remaining allegations in Paragraph 20, Samuel lacks knowledge sufficient to confirm or deny such allegations and on that basis denies the same.

## FACTUAL BACKGROUND

### Signode's Business

21.    Signode and its global affiliates make and sell hundreds of products that protect their customers' goods during warehousing and transit. Those products include consumables— such as plastic strap, steel strap, and plastic stretch film—and tools and equipment that apply the consumables to goods to pack, bundle, unitize, protect, and secure them.

**ANSWER:**    Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 21 and on that basis denies the same.

22.    The high-end market for industrial-packaging tools and equipment in which Signode participates is highly competitive, which incentivizes innovation.

**ANSWER:**   The allegations in Paragraph 22 are vague and ambiguous, and therefore Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 22 and on that basis denies the same.

23.     Signode has grown its global patent portfolio to over 360 United States issued patents or pending patent applications and over 980 issued patents or pending patent applications outside the United States. Signode's portfolio covers over 350 inventions and spans diverse business platforms, as well as the different countries in which it operates. Signode's sizable patent portfolio demonstrates its pioneering role and commitment to protecting its technology.

**ANSWER:**   Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 23 and on that basis denies the same.

24.     Many of Signode's pioneering innovations and patents are directed to battery powered strapping tools used to form a tensioned loop of plastic strap around a load of goods to bundle them together or to unitize them onto a pallet ("battery plastic strapping tools").

**ANSWER:**   Samuel admits that the subject matter of the Asserted Patents relates to strapping tools.  Samuel denies that Signode has pioneering innovations and patents.  Samuel lacks knowledge sufficient to confirm or deny the remaining allegations contained in Paragraph 24 and on that basis denies the same.

25.     Signode sells its current-generation battery plastic strapping tools globally under three brands: the Signode® BXT3-13/16/19/32 series, the Orgapack® ORT-130/260/450/670 series, and the Strapex® 71/73/75/77 series. Because all of these tools rely on the same underlying technology, we collectively refer to them throughout as the "BXT3" and the "BXT3 series."



**ANSWER:**   Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 25 and on that basis denies the same.

26.     The BXT3 series makes up over half of the global market share for high-end battery plastic strapping tools.

**ANSWER:**   Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 26 and on that basis denies the same.

27.     Being one of Signode's most innovative and profitable product lines, Signode has more than 200 patents and patent applications around the world covering battery plastic strapping tools, including patents covering more than 15 of the BXT3's inventive features and several features that Signode developed but did not include in the BXT3 or its predecessors.

**ANSWER:**   Samuel denies that Signode's battery plastic strapping tools are innovative. Samuel lacks knowledge sufficient to confirm or deny the allegations contained in Paragraph 27 and on that basis denies the same.

<u>Samuel's Business</u>

28.     Samuel manufactures battery plastic strapping tools.

**ANSWER:**   Samuel admits that Samuel USA manufactures tools related to plastic strapping, including the STL-500 tool.  Samuel denies that Samuel Canada manufactures battery plastic strapping tools.  Samuel denies any remaining allegations contained in Paragraph 28.

29.    Recently, Samuel began manufacturing the STL-500 battery plastic strapping tool in the United States and started advertising this tool to the United States market through at least its website and videos posted to YouTube that show the tool in action (for example https://youtu.be/lVXTMyRk67Y?list=TLGGdT_4DQVrCGEwMTAyMjAyNA).



**ANSWER:**    Samuel admits that Samuel USA manufactures the STL-500 Battery Operated Plastic Strapping Tool in the United States and that this tool is advertised through Samuel USA's website.    Samuel further admits that the YouTube video at https://youtu.be/lVXTMyRk67Y?list=TLGGdT_4DQVrCGEwMTAyMjAyNA relates to and shows some aspects of the STL-500 tool.    Any remaining allegations in Paragraph 29 are denied.

30.    Samuel advertises a mobile application that supports the STL-500 that allows the user to customize settings, access information related to the STL-500, and track certain maintenance-related metrics.    STL-500, https://samuelpackagingstore.com/products/stl-500-battery-operated-plastic-strapping-tool (last visited Jan. 29, 2024).



**ANSWER:**   Samuel admits that the webpage associated with the URL listed in Paragraph 30 includes the image above as of the undersigned date.  The depicted screen capture speaks for itself.  Any remaining allegations in Paragraph 30 are denied.

31.     A STL-500 product manual is accessible via Samuel's mobile application. In the product manual, Samuel represents that the STL-500 practices U.S. Patent No. 11,174,051 ("the '051 Patent"). On information and belief, the STL-500 product manual and the '051 Patent show the components of and describe the operation of the STL-500.

**ANSWER:**   Samuel admits that a user manual for the STL-500 tool is accessible via a mobile application and that the user manual states "Patented Technology" and lists U.S. Patent No. 11,174,051. Samuel further admits that the user manual for the STL-500 lists certain components of the tool and includes a section titled "Operating Procedure."  Samuel further admits that the '051 Patent covers certain aspects of the STL-500 tool. To the extent there are any remaining allegations in Paragraph 31, these allegations are denied.

32.     Samuel recently began offering the STL-500 for sale in the United States:



Samuel STL-500, *available* at https://samuelpackagingstore.com/products/stl-500-battery-operated-plastic-strapping-tool (last visited Jan. 29, 2024).

**ANSWER:**    Samuel admits that Samuel USA offers the STL-500 tool for sale in the United States via Samuel USA's website, samuelpackagingstore.com. To the extent there are any remaining allegations in Paragraph 32, these allegations are denied.

33.    On information and belief, Samuel actively monitors Signode's patent portfolio and product offerings.  For example, Samuel cited to the following Signode patents or patent applications during prosecution of the '051 Patent: GB405753A, US3669799A, US4161910A, US2011/0056390A1,    US2011/0056392A1,    WO2014/072775A1,    US2016/0046398A1, US9315283B2, US2016/0159505A1, US2017/0008652A1, US958670B2, US2017/0166335A1, and US2017/0174374A1. Furthermore, Samuel disclosed certain references related to Signode's BXT2-series products and Orgapack ORT 250 and 400 products during the prosecution '051 Patent. Finally, Samuel has purchased Signode battery plastic strapping tools. Given this, on information and belief, Samuel was aware of the Asserted Patents before the filing of this Complaint. Alternatively, Samuel was at least willfully blind to the existence of the Asserted Patents prior to the filing of the Complaint.

**ANSWER:**    The allegations in Paragraph 33 are related to Signode's pre-suit willfulness claim, which was dismissed by the Court pursuant to ECF No. 39.  The allegations of Paragraph 33 are denied on that basis.  Samuel further denies that it actively monitors Signode's patent portfolio and product offerings.  The prosecution file history of the application resulting in the issuance of the '051 Patent speaks for itself.  Samuel admits that it has been a distributor of various Signode tools for many years, and in that capacity has purchased some Signode tools for resale to third party customers.  Samuel denies that it was aware of the Asserted Patents before the filing of the original Complaint (as to the '417 and '418 Patents) or before the filing of the FAC (as to the '430 Patent). Samuel further denies that it was willfully blind to the existence of the Asserted

14

Patents prior to the filing of the Complaint (as to the '417 and '418 Patents) or prior to the filing of the FAC (as to the '430 Patent), and indeed the Court has dismissed Signode's pre-suit allegations in this regard.  To the extent there are any remaining allegations in Paragraph 33, these allegations are denied.

34.     Furthermore, there are only a limited number of companies that provide high-end battery plastic strapping tools.  Upon information and belief, Samuel was aware of, or at least willfully blind to, the existence of the Asserted Patents given the small size of the market, Signode's significantly larger market share, and Signode's history of being an innovator in the high-end battery plastic strapping tool market.

**ANSWER:**     The allegations in Paragraph 34 are related to Signode's pre-suit willfulness claim, which was dismissed by the Court pursuant to ECF No. 39.  The allegations of Paragraph 34 are denied on that basis.  Samuel further denies that it was aware of or willfully blind to the existence of the Asserted Patents.  Samuel also denies that Signode is, or has history of being, an innovator in the high-end battery plastic strapping tool market.  Any remaining allegations in Paragraph 34 are denied.

**COUNT I**

**<u>INFRINGEMENT OF THE '417 PATENT</u>**

35.     Signode incorporates by reference the allegations in Paragraphs 1 through 34 above.

**ANSWER:**     Samuel repeats and incorporates by reference herein its responses to Paragraphs 1-34 as set forth above.

36.     Samuel has infringed and will continue to infringe at least claim 1 of the '417 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the STL-500.

**ANSWER:**    Denied.

37.     Specifically, as illustrated below, the STL-500 is a strapping device that includes a base comprising a tensioning plate.



**ANSWER:**    Samuel admits that the STL-500 is a strapping tool.  Samuel denies the remaining allegations of Paragraph 37.

38.     The STL-500 strapping device further includes a rocker pivotable about a rocker-pivot axis from a first rocker position to a second rocker position.



16



**ANSWER:**   Samuel admits that the STL-500 is a strapping tool.   Samuel denies the remaining allegations of Paragraph 38.

39.     The STL-500 strapping device further includes a tensioning wheel rotatable about a tensioning-wheel axis and pivotable with the rocker such that movement of the rocker from the first rocker position to the second rocker position moves the tensioning wheel away from the tensioning plate and movement of the rocker from the second rocker position to the first rocker position moves the tensioning wheel toward the tensioning plate.





**ANSWER:**    Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 39.

40.    The STL-500 strapping device further includes a sealing device.



**ANSWER:**    Samuel admits that the STL-500 is a strapping device. Samuel denies the remaining allegations of Paragraph 40.

41.    The STL-500 strapping device further includes a spring imparting a spring force to the rocker that biases the rocker to the first rocker position.



**ANSWER:**    Samuel admits that the STL-500 is a strapping tool that includes a spring. Samuel denies the remaining allegations of Paragraph 41.

42.    The STL-500 strapping device further includes an input device movable from a release position to an activated position to activate a motor operably connected to the rocker to pivot the rocker from the first rocker position to the second rocker position, wherein the spring forces the rocker from the second rocker position toward the first rocker position responsive to the input device being released from the activated position.



19



**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 42.

43.     In view of the foregoing, STL-500 has directly infringed the '417 Patent in violation of 35 U.S.C. § 271(a).

**ANSWER:**   Denied.

44.     Moreover, Samuel's infringement of the '417 Patent is willful, at least as of the filing of this Complaint. Prior to the filing of this Complaint, Samuel was, at a minimum, willfully blind to the existence of the '417 Patent and its infringement thereof. However, no later than the filing and service of this Complaint, Samuel has had knowledge of the '417 Patent and the infringing nature of the STL-500 and components thereof. Despite this, Samuel continues to infringe the '417 Patent.

**ANSWER:**   Samuel denies the allegations in Paragraph 44 that are related to Signode's pre-suit willfulness claim, which was dismissed by the Court pursuant to ECF No. 39.  Samuel admits that it has had knowledge of the '417 Patent since learning of the Complaint, but denies

that it is infringing the '417 Patent or that any alleged infringement is willful.  Samuel denies the remaining allegations of Paragraph 44.

45.     Samuel's continued infringement of the '417 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

**ANSWER:**    Denied.

**COUNT II**

**<u>INFRINGEMENT OF THE '418 PATENT</u>**

46.     Signode incorporates by reference the allegations in Paragraphs 1 through 45 above.

**ANSWER:**    Samuel repeats and incorporates by reference herein its responses to Paragraphs 1-45 as set forth above.

47.     Samuel has infringed and will continue to infringe at least claim 1 of the '418 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the STL-500.

**ANSWER:**    Denied.

48.     Specifically, as illustrated below, the STL-500 is a strapping device that includes a base plate and a tensioning plate on the base plate.



21

**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 48.

49.   The STL-500 strapping device further includes a rocker pivotable about a rocker axis from a first rocker position to a second rocker position.





**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 49.

50.   The STL-500 strapping device further includes a tensioning wheel pivotable with the rocker such that movement of the rocker from the first rocker position to the second rocker position moves the tensioning wheel away from the tensioning plate and movement of the rocker from the second rocker position to the first rocker position moves the tensioning wheel toward the tensioning plate, wherein the tensioning wheel is rotatable about a tensioning-wheel axis in a tensioning direction and in a reverse direction opposite the tensioning direction.





**ANSWER:**    Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 50.

51.    The STL-500 strapping device further includes a blocking element indirectly connected to the tensioning wheel and rotatable about a blocking-element axis in a first rotational direction; a shaft having a shaft axis; a lever movable between a first lever position and a second lever position, wherein when the lever is in the first lever position, the blocking element is prevented from rotating in the first rotational direction such that, after the tensioning wheel tensions strap around an object, the blocking element prevents the tensioning wheel from rotating in the reverse direction, wherein when the lever is in the second lever position, the blocking element is rotatable in the first rotational direction to enable the tensioning wheel to rotate in the reverse direction; and a rotatable element rotatable about the shaft axis and configured to force the lever to move from the first lever position to the second lever position as the rotatable element rotates about the shaft axis.





**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the

remaining allegations of Paragraph 51.

52.   In view of the foregoing, STL-500 has directly infringed the '418 Patent in violation

of 35 U.S.C. § 271(a).

**ANSWER:**   Denied.

53.     Moreover, Samuel's infringement of the '418 Patent is willful, at least as of the filing of this Complaint. Prior to the filing of this Complaint, Samuel was, at a minimum, willfully blind to the existence of the '418 Patent and its infringement thereof. However, no later than the filing and service of this Complaint, Samuel has had knowledge of the '418 Patent and the infringing nature of the STL-500 and components thereof. Despite this, Samuel continues to infringe the '418 Patent.

**ANSWER:**     Samuel denies the allegations in Paragraph 53 that are related to Signode's pre-suit willfulness claim, which was dismissed by the Court pursuant to ECF No. 39.  Samuel admits that it has had knowledge of the '418 Patent since learning of the Complaint, but denies that it is infringing the '418 Patent or that any alleged infringement is willful.  Samuel denies the remaining allegations of Paragraph 53.

54.     Samuel's continued infringement of the '418 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

**ANSWER:**     Denied.

**COUNT III**

**<u>INFRINGEMENT OF THE '430 PATENT</u>**

55.     Signode incorporates by reference the allegations in Paragraphs 1 through 54 above.

**ANSWER:**     Samuel repeats and incorporates by reference herein its responses to Paragraphs 1-54 as set forth above.

56.     Samuel has infringed and will continue to infringe at least claim 1 of the '430 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the STL-500.

**ANSWER:**   Denied.

57.    Specifically, as illustrated below, the STL-500 is a strapping device that includes a base comprising a tensioning plate.



**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 57.

58.    The STL-500 strapping device further includes a rocker pivotable between a first rocker position and a second rocker position.





**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 58.

59.   The STL-500 strapping device further includes a rotatable tensioning wheel that is pivotable with the rocker such that movement of the rocker from the first rocker position to the second rocker position moves the tensioning wheel away from the tensioning plate and movement of the rocker from the second rocker position to the first rocker position moves the tensioning wheel toward the tensioning plate.





**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 59.

60.   The STL-500 further includes a friction-welding device movable between a release position and a welding position.

 

**ANSWER:**   Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 60.

61.   The STL-500 further includes a motor comprising a drive shaft rotatable in a first rotational direction to cause the rocker to pivot from the first rocker position to the second rocker position and in a second rotational direction opposite the first rotational direction to cause the friction welding device to move from the release position to the welding position.



STPM01055

Drive Shaft

Swing Arm

STPM01055   ASSEMBLY SERVO
SERVO D'ASSEMBLAGE
SERVOMONTAJE

Top View

Servo Motor

Cam #1   Cam #2   Cam #3
STPM01036
STPM01055
First Rotational
Direction
First Rotational
Direction

Cam Shaft
Rocker
Assembly

Rocker at the first rocker position
Cam #2

Rocker at the second rocker position
Rocker
Raised

29

**ANSWER:**    Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 61.

62.    The STL-500 further includes a transmission mechanism operably connecting the drive shaft of the motor to the friction-welding device such that rotation of the drive shaft in the second rotational direction actuates the transmission mechanism to move the friction-welding device from the release position to the welding position.



**ANSWER:**    Samuel admits that the STL-500 is a strapping tool. Samuel denies the remaining allegations of Paragraph 62.

63.    In view of the foregoing, STL-500 has directly infringed the '430 Patent in violation of 35 U.S.C. § 271(a).

**ANSWER:**    Denied.

64.    Moreover, Samuel's infringement of the '430 Patent is willful, at least as of the filing of this Complaint. Prior to the filing of this Complaint, Samuel was, at a minimum, willfully blind to the existence of the '430 Patent and its infringement thereof. However, no later than the

filing and service of this Complaint, Samuel has had knowledge of the '430 Patent and the infringing nature of the STL-500 and components thereof. Despite this, Samuel continues to infringe the '430 Patent.

**ANSWER:**   Samuel denies the allegations in Paragraph 64 that are related to Signode's pre-suit willfulness claim, which was dismissed by the Court pursuant to ECF No. 39.  Samuel admits that it has had knowledge of the '430 patent since learning of the FAC, but denies that it is infringing the '430 Patent or that any alleged infringement is willful.  Samuel denies the remaining allegations of Paragraph 64.

65.    Samuel's continued infringement of the '430 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

**ANSWER:**   Denied.

## RESPONSE TO PRAYER FOR RELIEF

Samuel generally denies any allegations by Signode that are not specifically admitted in this Answer and denies that Plaintiff is entitled to any relief whatsoever. Further, as to Plaintiff's request for relief related to its pre-suit willfulness claim, Plaintiff is not entitled to any relief as that claim was dismissed by the Court pursuant to ECF No. 39.

## AFFIRMATIVE DEFENSES & AVOIDANCES

Samuel alleges and asserts the following affirmative defenses and avoidances in response to Plaintiff's claims, without assuming any burden that it would not otherwise bear. Samuel reserves the right to assert additional defenses or counterclaims that become known through the course of this action.

## First Defense
## (Failure to State a Claim)

Plaintiff's Complaint fails to state any claim upon which relief can be granted.

31

## Second Defense
## (Non-Infringement)

Samuel has not infringed and does not infringe—literally or under the doctrine of equivalents; directly, indirectly, jointly, or in any other manner—any valid, enforceable, asserted claim of any of the Asserted Patents.

## Third Defense
## (Invalidity)

Each asserted claim of the Asserted Patents is invalid for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code, including, but not limited to, §§ 101, 102, 103, 112, 116, and/or 132.

## Fourth Defense
## (Failure to Mark)

To the extent Plaintiff or any predecessor-in-interest or licensee to the Asserted Patents failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise give proper notice that Samuel's actions allegedly infringe the Asserted Patents, Samuel is not liable to Plaintiff for damages as to any acts alleged to have been performed before Samuel received actual notice that it was allegedly infringing the Asserted Patents.

## Fifth Defense
## (Ensnarement)

Signode's enforcement of the Asserted Patents against Samuel is barred by the doctrine of ensnarement. To the extent Signode interprets any of the asserted claims to cover the Accused Products, the asserted claims are invalid and Plaintiff's claims are barred because the asserted claim scope encompasses or ensnares the prior art.  Further, Samuel cannot be found to infringe under the doctrine of equivalents because any "hypothetical claim" literally covering the Accused Products would be unpatentable under one or both of 35 U.S.C. §§ 102-103.

## Sixth Defense
## (Limitation on Damages)

Plaintiff's claims for damages are statutorily limited by 35 U.S.C. § 286.

## Seventh Defense
## (No Enhanced Damages)

In the event Samuel were found to infringe any valid, enforceable claim of the Asserted

Patents, Plaintiff is precluded from recovering increased or enhanced damages under 35 U.S.C.

§ 284.

## Eighth Defense
## (No Willfulness)

In the event Samuel were found to infringe any valid, enforceable claim of the Asserted

Patents, such infringement was not willful.

## Ninth Defense
## (No Attorneys' Fees)

Plaintiff is precluded from recovering its reasonable attorneys' fees and/or costs under 35

U.S.C. § 285.

## Tenth Defense
## (No Costs)

Plaintiff is precluded from recovering costs associated with this action under 35 U.S.C.

§ 288.

## Eleventh Defense
## (No Injunctive Relief)

Plaintiff is not entitled to any injunctive relief under any theory, including without

limitation, because: any alleged injury to Plaintiff is not immediate or irreparable; in the unlikely

event Plaintiff prevails, Plaintiff has an adequate remedy at law; and/or public policy concerns

weigh against any injunctive relief.

**Twelfth Defense**
**(Unclean Hands and/or Patent Misuse)**

The inventors for the '417 Patent and the '430 Patent are listed on the face of the patents as Flavio Finzo, Mirco Neeser, and Dimitrios Takidis. The '417 Patent claims priority to Swiss applications 1723/12 and 1724/12 filed on September 24, 2012, but the Swiss applications do not properly support the claims of at least the '417 Patent, e.g., due to the recited input device limitation in claim 1 of the '417 Patent. Accordingly, at least the claims of the '417 Patent cannot be entitled to any earlier priority date than September 24, 2013, the filling date of PCT/IB2013/002116 (though Plaintiff has also failed to establish proper support in the September 24, 2013 PCT filing).

In contrast, Application PCT/CH2014/000059 was filed on May 5, 2014, with corresponding U.S. Application No. 14/787,966 that published as U.S. Patent Publication No. 2016/0107775, claiming priority to Swiss applications 910/13 and 911/13, both filed on May 5, 2013. All of these applications list Messrs. Pascal Amacker and Andreas Keller as the only named inventors. The May 5, 2013 Swiss filings and later PCT/US filings disclose all of the features recited in one or more of the asserted claims of the '417 and '430 Patents, including *inter alia* motorized movement of the rocker, and input device actuation to trigger/control device operation.

Moreover, Messrs. Amacker's and Keller's PCT/US applications further claim priority to Swiss applications 1629/13 and 1630/13, filed September 24, 2013, which have further details relating to such features. The claim of priority to these Swiss applications supports that Messrs. Amacker and Keller consider themselves as inventors of the subject matter disclosed in the 1629/13 and 1630/13 applications as well, in addition to Swiss applications 910/13 and 911/13. Messrs. Amacker's and Keller's patent applications further present claims for subject matter they purported to invent such as motorized movement of the rocker that moves the tensioning wheel,

just as claimed in the '417 and '430 Patents, where device operations are triggered/controlled by actuation of the input device, just as claimed in at least the '417 Patent.

The Amacker and Keller applications never resulted in a patent issued by the U.S. Patent Office, the pending claims of which went abandoned in October of 2019 after multiple office action rejections by a different Examiner than the examiner of the applications leading to the '417 and '430 Patents. However, during at least some if not all of the time that Amacker's and Keller's application was pending before the U.S. Patent Office, Plaintiff was the applicant for that application. Moreover, the same law firm, Neal, Gerber & Eisenberg LLP, and at least two of the same prosecuting attorneys from that law firm, Kevin Cukierski and Adam Masia, signed filings and prosecuted both Amacker's and Keller's application as well as various applications in the '417 and '430 Patent families, including for the applications that led directly to the '417 and '430 Patents as to at least Adam Masia.

In short, Signode and its prosecution attorneys pursued patent protection over the same or substantially the same subject matter via two different sets of applications being considered by two different examiners before the U.S. Patent Office, yet while naming two different sets of inventors.

Upon information and belief, Messrs. Finzo, Neeser, and Takidis should never have been awarded the '417 Patent, nor therefore subsequent patents such as the '430 Patent, which claims priority to the application for the '417 Patent. Further, the purported assignee, Plaintiff, should never have presented Messrs. Finzo, Neeser, and Takidis as the inventors, or sought enforcement of at least the '417 and '430 Patents in this litigation.

Based on the foregoing, Plaintiff's attempted enforcement of at least the '417 and '430 Patents against Samuel is barred by one or more of the equitable doctrines of unclean hands, patent misuse, and/or other applicable equitable defenses.

**Thirteenth Defense**
**(Prosecution History Estoppel)**

Plaintiff is estopped from asserting any interpretations of any claims of the Asserted Patents that covers the Accused Products as such as scope was surrendered during, and/or is inconsistent with any statements, representations, or admissions made during, prosecution of the patent applications that resulted in the Asserted Patents or any applications related thereto.

**Fourteenth Defense**
**(Lack of Standing)**

Plaintiff lacks standing to assert one or more of the Asserted Patents at least because it has failed to establish ownership of each Asserted Patents.

**EXPRESS RESERVATION OF DEFENSES**

Samuel reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this litigation.

WHEREFORE, Samuel requests that Plaintiff's Complaint be dismissed in its entirety and that the Court grant such other and further relief to which Samuel may be entitled, including attorneys' fees and costs.


Dated: September 5, 2024

Respectfully submitted,

*/s/ Michael R. Houston*

Michael R. Houston (IL Bar No. 6286431)
Pavan K. Agarwal (D.C. Bar No. 459614)
Tiffany K. Sung (CA Bar No. 323077)
Gabriella M. Salek (IL Bar No. 6342686)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4378
Facsimile: (312) 832-4700
Email: mhouston@foley.com
        pagarwal@foley.com
        tsung@foley.com
        gsalek@foley.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***Attorneys for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 5th day of September 2024.


*/s/ Melissa R. Smith*
Melissa R. Smith