# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SIGNODE INDUSTRIAL GROUP LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 2:24-cv-00080-JRG |
| SAMUEL, SON & CO., LTD. and SAMUEL, SON & CO. (USA) INC. d/b/a SAMUEL PACKAGING SYSTEMS GROUP and SAMUEL STRAPPING SYSTEMS, | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANTS SAMUEL, SON & CO., LTD.'S AND SAMUEL, SON & CO. (USA) INC.'S OPPOSITION TO SIGNODE'S MOTION TO STRIKE SAMUEL'S TWELFTH AFFIRMATIVE DEFENSES OF UNCLEAN HANDS, PATENT MISUSE, AND OTHER EQUITABLE DOCTRINES

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...............................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................................2

III.    LEGAL STANDARDS ......................................................................................................6

        A.     Motions To Strike Are Disfavored and Are a Drastic Remedy ..............................6

        B.     Unclean Hands Can Be Based on Pre-Issuance Conduct ........................................7

        C.     Patent Misuse Can Be Based on Pre-Issuance Conduct .........................................9

IV.    ARGUMENT ....................................................................................................................10

        A.     Samuel Has Satisfied the Fair Notice Pleading Standard for Unclean
               Hands, which Can Be Premised on Pre-Issuance Activities ..................................10

        B.     Samuel Has Satisfied the Fair Notice Pleading Standard for Patent Misuse,
               which Can Be Premised on Pre-Issuance Activities .............................................12

        C.     Samuel's Improper Inventorship Defense Is Not Coextensive with its
               Unclean Hands/Patent Misuse Defenses ...............................................................13

        D.     Samuel's "Other Equitable Defenses" Language May Be Dropped for
               Now .......................................................................................................................14

        E.     In the Alternative, Samuel Requests Leave To Amend .........................................15

V.     CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Southern Ins. Co. v. Buckley*,
    748 F. Supp. 2d 610 (E.D. Tex. 2010) ........................................................................ 6

*Bavely, Tr. of AAA Sports, Inc. v. Panini Am., Inc.*,
    No. 4:22-CV-093, 2022 WL 19076610 (E.D. Tex. Oct. 19, 2022) ......................... 15

*Bombardier Recreational Prods., Inc. v. Arctic Cat Inc.*,
    No. CV 12-2706 (JRT/LIB), 2017 WL 5610220 (D. Minn. Nov. 20, 2017).......................... 14

*Cinel v. Connick*,
    15 F.3d 1338 (5th Cir. 1994) ..................................................................................... 4

*Foman v. Davis*,
    371 U.S. 178 (1962)................................................................................................... 15

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ..................................................................................... 4

*Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*,
    No. 4:19-CV-00358, 2020 WL 3453717 (E.D. Tex. June 24, 2020)......................... 15

*Gilead Scis., Inc. v. Merck & Co.*,
    888 F.3d 1231 (Fed. Cir. 2018)...................................................................... 8, 11, 12

*Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*,
    No. 2:21-CV-00213-JRG, 2022 WL 2055234 (E.D. Tex. June 6, 2022) ............................. 6, 7

*GREE, Inc. v. Supercell Oy*,
    *2:19-cv-00071-JRG-RSP*, 2019 WL 5677511 (E.D. Tex. Oct. 30, 2019) ................................ 7

*In re Gabapentin Pat. Litig.*,
    648 F. Supp. 2d 641 (D.N.J. 2009) ............................................................... 9, 10, 12

*JumpSport, Inc. v. Acad., Ltd.*,
    *6:17-CV-414-RWS-JDL,*2018 WL 10124888 n.3 (E.D. Tex. Sept. 6, 2018)........................... 7

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*,
    677 F.2d 1045 (5th Cir. 1982) ................................................................................... 6

*Keystone Driller Co. v. Gen. Excavator Co.*,
    290 U.S. 240 (1933)................................................................................................... 8

*Luv n' Care, Ltd. v. Laurain*,
   98 F.4th 1081 (Fed. Cir. 2024) ................................................................................ 7

*Miracor Medical SA v. Abbott Labs.*,
   No. 23 C 16257, 2024 WL 4487294 (N.D. Ill. Oct. 7, 2024) ................................. 9, 10, 11, 12

*Motorola Mobility, Inc. v. TiVo Inc.*,
   No. 5:11-CV-053-JRG, 2013 WL 12040725 (E.D. Tex. Jan. 25, 2013) ................................. 6

*Netlist, Inc. v. Micron Tech., Inc.*,
   No. 2:22-CV-203-JRG-RSP, 2024 WL 698135 (E.D. Tex. Jan. 15, 2024)............................. 9

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945)..................................................................................................... 8

*Princo Corp. v. Int'l Trade Comm'n*,
   616 F.3d 1318 (Fed. Cir. 2010).................................................................................. 9

*Sanchez v. Z & C Garden, LLC*,
   No. 2:23-CV-00183, 2024 WL 1741812 (S.D. Tex. Feb. 6, 2024) ............................. 7

*Solis v. Bruister*,
   No. 4:10CV77-DPJ-FKB, 2012 WL 776028 (S.D. Miss. Mar. 8, 2012) ..................... 7, 12

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
   No. 18-CV-5075 (LJL), 2020 WL 3472597 (S.D.N.Y. June 25, 2020) ..................... 14

*United States v. Coney*,
   689 F.3d 365 (5th Cir. 2012) ..................................................................................... 6

*Veranda Assocs., L.P. v. Hooper*,
   No. H–11–4206, 2012 WL 602143 (S.D. Tex. Feb. 23, 2012)............................. 7, 12

*Virginia Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997)................................................................................... 9

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
   782 F.2d 995 (Fed.Cir.1986)...................................................................................... 9

*Woodfield v. Bowman*,
   193 F.3d 354 (5th Cir. 1999) ..................................................................................... 7

Statutes

35 U.S.C. § 101................................................................................................................ 14

35 U.S.C. § 102................................................................................................................ 14

35 U.S.C. § 119................................................................................................................ 14

iii

35 U.S.C. § 120 ................................................................................................................ 14

35 U.S.C. § 256 ................................................................................................................ 13

35 U.S.C. § 256(a) ........................................................................................................... 14

35 U.S.C. § 271(d)(3) ...................................................................................................... 13

Rules

Federal Rule of Civil Procedure 15(a)(2) ....................................................................... 15

MPEP § 1481.02 .............................................................................................................. 14

Regulations

37 CFR 1.324 ................................................................................................................... 14

## I.    INTRODUCTION

Defendants Samuel, Son & Co., Ltd. and Samuel, Son & Co. (USA) Inc. (collectively "Defendants" or "Samuel") submit this Opposition to Plaintiff Signode Industrial Group LLC's ("Plaintiff" or "Signode") Motion to Strike Samuel's Twelfth Affirmative Defenses of Unclean Hands, Patent Misuse, and Other Equitable Doctrines (Dkt. 54, "Motion"). Signode's Motion should be denied with respect to the defenses of unclean hands and patent misuse, because Samuel has readily satisfied the applicable fair notice standard for those Affirmative Defenses.

As outlined in the First Amended Answer (Dkt. 47), Signode wrongly pursued and obtained patents based on patent applications naming the "Finzo Group" of inventors who Samuel contends did not invent the claimed subject matter. Signode's acquisition of the patents asserted here occurred only years after abandoning another line of patent applications that named the "Amacker Group" of inventors who first disclosed the relevant subject matter. Triggered by Samuel's release of the accused STL-500 device, Signode wrongfully sought to revive the long-abandoned Amacker Group subject matter by pursuing patents under the Finzo Group knowing that they were not the true inventors, and then asserted these wrongfully-obtained patents against Samuel.

Signode argues that unclean hands and patent misuse do not cover events occurring prior to patent issuance, and that misconduct during patent prosecution can only be addressed through the doctrine of inequitable conduct. Signode is wrong as a matter of law. Precedent demonstrates that unclean hands and patent misuse can be based on pre-issuance conduct and can apply to the misconduct alleged by Samuel here, and that inequitable conduct is not the sole available defense to such misconduct. Just because Signode contests the merits of Samuel's affirmative defenses, that does not justify striking Samuel's pleadings, which readily meet the pleading requirements.

Regarding the statement including "other equitable defenses" in Samuel's Twelfth

Affirmative Defense, Samuel does not oppose removing that particular language, with the understanding that Samuel reserves the right to later seek leave to amend its affirmative defenses based upon later-discovered facts, in accordance with the Court's rules.

## II.   FACTUAL BACKGROUND

Signode filed a first Complaint on February 6, 2024 (Dkt. 1) alleging infringement of U.S. Patent Nos. 11,667,417 (Dkt. 20-1, "the '417 Patent") and 11,667,418 (Dkt. 20-2, "the '418 Patent"), and a First Amended Complaint on May 15, 2024 (Dkt. 20), further alleging infringement of U.S. Patent No. 11,932,430 (Dkt. 20-3, "the '430 Patent"). Samuel Answered the First Amended Complaint on Aug. 15, 2024 (Dkt. 42) and filed a First Amended Answer ("FAA") on September 5, 2024, which included Samuel's Twelfth Affirmative Defenses at issue here (Dkt. 47).

Samuel's FAA set forth numerous specifics relating to Signode's failed attempt to procure certain patents under the Amacker Group inventors covering subject matter relevant here – and then years later procuring the '417 and '430 patents with a different, incorrect inventor group, known as the Finzo Group, to assert them in litigation. *Id.*, 34-35. Based on the facts alleged in the FAA, Samuel contends that "Plaintiff's attempted enforcement of at least the '417 and '430 Patents against Samuel is barred by one or more of the equitable doctrines of unclean hands, patent misuse, and/or other applicable equitable defenses." *Id.*

In particular, Samuel's Twelfth Affirmative Defenses are premised on Signode's actions concerning two separate lines of patent applications naming entirely different inventor groups:

(1) Finzo Group – includes the '417 and '430 Patents, as well as the applications to which they claimed priority, and names as inventors Flavio Finzo, Mirco Neeser, and Dimitrios Takidis. *Id.* at 34; Dkt. 20-1, 20-3; and

(2) Amacker Group – includes U.S. Patent App. No. 14/787,966, which

2

published as U.S. Patent App. Pub. No. 2016/0107775 (Ex. 1,[1] "the '966 Application"), as well as the applications to which it claimed priority, and names as inventors Pascal Amacker and Andreas Keller. Dkt. 47 at 34-35.

By way of further background, the Finzo Group filed two Swiss applications on September 24, 2012, bearing Swiss Application Serial Nos. 1723/12 (Ex. 2) and 1724/12 (Ex. 3), directed to a strapping device, to which the '417 and '430 Patents claim priority. However, these Swiss applications do not disclose the alleged inventions that Signode would many years later claim under the Finzo Group inventors in the '417 and '430 Patents. For example, the Finzo Swiss applications fail to disclose a strapping device with a motorized rocker and an "input device" that: (i) upon movement to an activated position, activates a motor to pivot a rocker to a second position that moves a tensioning wheel away from a tensioning plate, and (ii) upon being released from the activated position, the rocker moves to a first position that moves the tensioning wheel toward the tensioning plate. *See, e.g.,* '417 Patent, claim 1; '430 Patent, claim 4. Consistent with lack of invention by the Finzo Group, none of the claims in the Finzo Swiss applications recite strapping devices with an input device and its associated operation such as that described above to move the rocker in the manner as now claimed. Ex. 2, 3.

Meanwhile, the Amacker Group filed two Swiss patent applications on May 5, 2013, bearing Swiss Application Serial Nos. 910/13 and 911/13 (Ex. 4). Dkt. 47 at 34; Ex. 4. The Amacker Swiss applications disclose a strapping device having a motorized rocker and an input device that is movable to an activated position to operate a motorized rocker so the tensioning wheel and plate are further apart, and is movable to a release position from the activated position that moves the rocker so the wheel and plate move closer together. *Id*. For example, the Amacker

---

[1] All Exhibits are attached to the accompanying Declaration of Michael R. Houston.

911/13 application discloses as follows: "Pressing the rocker button 20 opens the rocker 8, meaning the rocker swings away from the tensioning wheel 7 with its tension plate 23" and "[w]hen the rocker button 20 is released, the rocker 8 swings the tension plate 23 back toward the tensioning wheel 7 …." Ex. 4 at 13 (emphasis added). The Amacker Swiss applications also include claims directed to a strapping device including a motorized rocker and a button (an example of an "input device") for moving the rocker. *See, e.g.*, Ex. 4 at 54, claim 8.

The Amacker Group filed additional Swiss applications with similar claims, including Swiss Application Serial No. 443/14 filed on March 24, 2014 (Ex. 5),[2] and a PCT Application Serial No. PCT/CH2014/000059 filed on May 5, 2014. *See* Ex. 1, front page. The 443/14 application includes claims directed to a strapping device including "a motor-driven rocker" and "a rocker button with which the drive movement for the rocker to create the distance between the tensioning wheel and the tensioning plate can be triggered." Ex. 5 at 104-07, claims 1, 17.

The Amacker Group then filed the U.S. '966 Application based on the foregoing Swiss and PCT applications. Ex. 1. Just like the priority applications before it, the Amacker Group's U.S. '966 Application claimed a strapping device with a motor-driven rocker and "an actuating device actuatable to … drive the rocker to generate the spacing between the tensioning wheel and the tensioning plate." *Id*. at 28, claim 31. Yet, the U.S. PTO repeatedly rejected the U.S. '966 Application, and, following numerous rejections and amendments, Signode eventually abandoned the this application in October 2019. Dkt. 47 at 35; Ex. 6, Notice of Abandonment of U.S. '966

---

[2] Swiss Application Serial No. 443/14 is cited on the face of the U.S. '966 Application publication (Ex. 1) and, the court can take judicial notice of this Swiss application. *See, e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts …, which were matters of public record directly relevant to the issue at hand.").

Application. Notably, the U.S. PTO Examiner for the U.S. Amacker Application was different than the examiner who would later allow applications leading to the '417 and '430 Patents. *Compare* Ex. 6, front page *with* Dkt. 20-1, front page & Dkt. 20-3, front page.

Thus, before the Finzo Group, the Amacker Group filed patent applications presenting a strapping device that included a motorized rocker and an input device operating the motor to move the rocker based on activation <u>and release positions of the input device</u>. The Amacker Group sought protection for a motorized rocker and an input device to operate movement of the rocker (together with other features), but the U.S. PTO never allowed the Amacker Group's claims.

In contrast, the Finzo Swiss applications failed to disclose an "input device" operating as later claimed in the '417 and '430 Patents. Ex. 2, 3. Further, over the next decade, the Finzo Group filed additional Swiss and U.S. applications, and obtained patents therefrom such as U.S. Patent Nos. 9,938,029 (Ex. 7), 10,370,132 (Ex. 8), 11,267,596 (Ex. 9), and 11,560,245 (Ex. 10) to which the '417 and '430 Patents claim priority. Yet, to Samuel's knowledge, none of the claims ever presented in these Finzo Group applications or patents recited a strapping device with a motorized rocker and an input device activated or released for moving the rocker as described.

Samuel contends that Signode's course of action supports that Signode knew the Finzo Group did not invent this concept, including because the Amacker Group had already disclosed it.

In June 2023, four years after abandoning the Amacker Group applications and just after Samuel released the accused STL-500 product, Signode submitted revised claims under a Finzo Group U.S. application which led to the '417 Patent, directed for the first time to motorized rocker movement triggered specifically by the activation <u>and release</u> of an input device. Dkt. 20-1. The Notice of Allowance (Ex. 11) for the '417 Patent – issued by a different examiner than the one who examined the U.S. Amacker application as noted above – premised the allowance on this

input device limitation, specifically that the <u>release of the input device</u> causes the rocker to move to the first position. Ex. 11 at 10 (emphasis added).

Samuel contends that, despite knowing that the Finzo Group were not the proper inventors, faced with having abandoned the Amacker applications and with new competition in the market from Samuel's STL-500 device, Signode presented the '417 and '430 claims to the U.S. PTO as the Finzo Group's invention to impermissibly broaden the scope of protection to more than it was entitled to, and Signode has now asserted the improperly-obtained '417 and '430 Patents against Samuel in this litigation. Dkt. 47 at 34-35. Moreover, the same law firm, Neal, Gerber & Eisenberg LLP, and at least two of the same prosecuting attorneys from that law firm, Kevin Cukierski and Adam Masia, signed filings and prosecuted both the Amacker Group's U.S. '966 Application as well as various applications from the Finzo Group, including the applications that led directly to the '417 and '430 Patents, further supporting Signode's knowledge of the alleged conduct. *Id.*, 35.

## III.   LEGAL STANDARDS

### A.   Motions To Strike Are Disfavored and Are a Drastic Remedy

"Motions to strike are generally disfavored." *Motorola Mobility, Inc. v. TiVo Inc.*, No. 5:11-CV-053-JRG, 2013 WL 12040725, at *2 (E.D. Tex. Jan. 25, 2013) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982)). "Indeed, striking portions of pleadings is a 'drastic remedy'…." *Id.* (citing *Am. Southern Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010)). "'[T]he action of striking a pleading should be sparingly used by the courts' and 'motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.'" *Id.* (quoting *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012)). "'[I]f an affirmative defense raises either a question of fact or a question of law, the court must deny a motion to strike.'" *Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, No. 2:21-CV-00213-JRG, 2022 WL 2055234, at *1 (E.D. Tex. June 6, 2022) (quoting

*GREE, Inc. v. Supercell Oy*, 2:19-cv-00071-JRG-RSP, 2019 WL 5677511, at *2 (E.D. Tex. Oct. 30, 2019)).

Affirmative defenses are <u>not</u> "subjected to the *Twombly/Iqbal* plausibility pleading standard" because "the Fifth Circuit has continued to apply the 'fair notice' pleading standard articulated in *Woodfield* even after the Supreme Court's decisions in *Twombly* and *Iqbal*." *JumpSport, Inc. v. Acad., Ltd.*, No. 6:17-CV-414-RWS-JDL, 2018 WL 10124888, at *2 n.3 (E.D. Tex. Sept. 6, 2018) (collecting cases). "Importantly, the fair notice standard is not a high bar to clear—the Fifth Circuit has held that pleading only the name of the affirmative defense may be sufficient to provide fair notice." *Sanchez v. Z & C Garden, LLC*, No. 2:23-CV-00183, 2024 WL 1741812, at *2 (S.D. Tex. Feb. 6, 2024) (citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)); *see also Godo Kaisha*, 2022 WL 2055234, at *3 (noting that the "fair notice" pleading standard articulated in *Woodfield* is a "low bar" and that "in some cases, merely pleading the name of the affirmative defense … may be sufficient").

"'Even when addressing a pure question of legal sufficiency courts are very reluctant to determine such issues on a motion to strike, preferring to determine them only after further development by way of discovery and a hearing on the merits, either on summary judgment motion or at trial.'" *Solis v. Bruister*, No. 4:10CV77-DPJ-FKB, 2012 WL 776028, at *7 (S.D. Miss. Mar. 8, 2012) (quoting *Veranda Assocs., L.P. v. Hooper*, No. H-11-4206, 2012 WL 602143, at *3 (S.D. Tex. Feb. 23, 2012)) (internal quotation marks omitted).

### B.      Unclean Hands Can Be Based on Pre-Issuance Conduct

"A court may find unclean hands when the misconduct of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation ... for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" *Luv n' Care, Ltd. v.*

7

*Laurain*, 98 F.4th 1081, 1094 (Fed. Cir. 2024) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). The Supreme Court stated that the doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Moreover, the doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant … [i]t is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'" *Id*. at 815 (quoting *Keystone*, 290 U.S. at 245-46).

Pre-issuance conduct, including misconduct during patent prosecution, can lead to a finding of unclean hands, barring a party from enforcing a patent. *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1240-44 (Fed. Cir. 2018). In *Gilead*, the Federal Circuit affirmed a district court's finding of unclean hands that was based in part on pre-issuance conduct including misconduct during patent prosecution.[3] *Id*. at 1234, 1240-44. The Federal Circuit indicated that it saw no error in the district court's determination that the pre-issuance misconduct was immediately and necessarily related to the equity of Merck's obtaining enforcement of its patent and, therefore, that the patent was unenforceable due to unclean hands. *Id*. at 1240, 1244. Another court recently denied a motion to strike an unclean hands defense that was premised on actions during patent

---

[3] The court in Gilead found the following pre-issuance conduct significant in its ruling of unclean hands: (1) during the prosecution of its patent applications, Merck's attorney, Dr. Durette, participated in a confidential conference call with Pharmasset, a company developing Hepatitis C treatments, which disclosed the structure of its compound PSI-6130; (2) this call was subject to a "firewall" agreement, meaning that certain Merck representatives, particularly those involved in related patent prosecutions, were not supposed to access this information; (3) despite knowing the conflict, Dr. Durette participated in the call and obtained confidential knowledge about PSI-6130; (4) he then continued to prosecute Merck's patent applications without withdrawing, even though his knowledge of Pharmasset's compound influenced how he structured Merck's claims.; and (5) after obtaining confidential information about PSI-6130, Dr. Durette amended Merck's pending patent applications to narrow the claims to cover the key features of PSI-6130. *Id*. at 1241-44.

prosecution. *See Miracor Medical SA v. Abbott Labs.*, No. 23 C 16257, 2024 WL 4487294, at *2-3 (N.D. Ill. Oct. 7, 2024) (denying motion to strike unclean hands defense because the defendants sufficiently alleged that the plaintiff engaged in unconscionable conduct related to patent prosecution). The court in *Miracor* also explained that affirmative defenses should not be stricken as being redundant of other defenses because "the Federal Rules allow parties to plead defenses and counterclaims in the alternative." *Id*. at *3.

### C.     Patent Misuse Can Be Based on Pre-Issuance Conduct

"Patent misuse is an equitable defense established when the patentee engages in conduct that impermissibly broadens a patent's physical or temporal scope with anticompetitive effect." *Netlist, Inc. v. Micron Tech., Inc.*, No. 2:22-CV-203-JRG-RSP, 2024 WL 698135, at *1 (E.D. Tex. Jan. 15, 2024), report and recommendation adopted, No. 2:22-CV-203-JRG-RSP, 2024 WL 692114 (E.D. Tex. Feb. 19, 2024) (citing *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997)); *see also Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) ("In our cases applying the Supreme Court's patent misuse decisions, we have characterized patent misuse as the patentee's act of 'impermissibly broaden[ing] the 'physical or temporal scope' of the patent grant with anticompetitive effect.'") (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed.Cir.1986)).

Pre-issuance conduct, such as actions taken during the prosecution of a patent application, may constitute patent misuse if it manipulates the patent system to secure an unfair competitive advantage. For example, in *In re Gabapentin Pat. Litig.*, 648 F. Supp. 2d 641, 651-56 (D.N.J. 2009), the court denied a motion to strike with respect to an affirmative defense of patent misuse that was based on conduct intended to broaden the scope of a patent through improper actions

taken during prosecution of the patent application and earlier patent applications.[4] *Id*.

The patent owner, Warner-Lambert, argued that the defendant's patent misuse defense should fail "because all of Warner-Lambert's allegedly improper actions occurred before the '482 Patent was officially issued …." *Id*. at 654. "In effect, they argue[d] that the patentee could not have obtained a market benefit beyond that which inures in the statutory patent right if the patent itself ha[d] not yet issued." *Id*. (quotations omitted). The court rejected that argument, explaining that "Warner-Lambert's alleged manipulation of the patent prosecution process, for the purpose of forestalling generic competition, is conduct that if proven could conceivably persuade a rational fact-finder applying a rule of reason that patent misuse has been established." *Id*.

The court further made clear that the pleading stage only required allegations of such conduct, explaining that correctness of the defendants' allegations went to the merits rather than its viability. *Id*. The court concluded that "[d]iscovery on such issues will proceed and the patent misuse affirmative defense will not be stricken." *Id*.; *see also Miracor*, 2024 WL 4487294, at *3 (denying motion to strike defense of patent misuse that was based on the plaintiff's pre-issuance patent prosecution conduct, where the patents were drafted to improperly broaden their scope).

## IV.    ARGUMENT

### A.    Samuel Has Satisfied the Fair Notice Pleading Standard for Unclean Hands, which Can Be Premised on Pre-Issuance Activities

Samuel's Twelfth Affirmative Defenses readily provide fair notice of its affirmative defense of unclean hands. Samuel provided details concerning the two lines of patent applications

---

[4] In particular, the court considered the following actions as supporting an affirmative defense for patent misuse: (1) submission of an Information Disclosure Statement ("IDS") that did not list all known material prior art; (2) filing a subsequent IDS and allegedly omitting a known patent from its IDS filing in bad faith; and (3) abandoning one application about a month before it would have issued and filing a continuation application, where the ultimately issued patent had claims similar to those previously allowed. *Id*. at 653.

in question, its contentions relating to inventorship, and Signode's actions in pursuing claims in applications that it had no rights to pursue (due to improper inventorship) at the U.S. PTO and then asserting infringement here. Dkt. 47 at 34-35. Signode's alleged unclean hands – wrongfully obtaining the '417 and '430 Patents – directly relates to Signode's assertion of the '417 and '430 Patents in this litigation. As discussed *supra*, striking portions of pleadings is a "drastic remedy," and fair notice is a "low bar" to clear. There is no "unfair surprise" because Samuel has provided more than fair notice of the alleged conduct forming the basis of Samuel's unclean hands defense. Therefore, Signode is wrong to argue that "Samuel's allegations fail to give fair notice of key elements of [] unclean hands thereby failing to provide fair notice of how the defense bars Signode's claims." Mot., 2-3.

Signode argues that "the '417 and '430 Patents were not even filed until January 4, 2023, and April 25, 2023, respectively," that "[m]ost of Samuel's allegations concern events that transpired prior to the issuance of the '417 and '430 Patents," and that unclean hands cannot be based on pre-issuance conduct. *Id*., 1, 4-5, 8. That is simply incorrect. As outlined above (*supra*, §III.B), unclean hands can be premised on pre-issuance conduct. *See Gilead*, 888 F.3d at 1240-44; *Miracor*, 2024 WL 4487294, at *2-3. Thus, while Signode attempts to isolate the '417 and '430 Patents by arguing that they were not even filed until 2023, it is Signode's actions in two sets of patent applications with entirely different named inventor groups spanning a decade—culminating in the '417 and '430 prosecutions and issuances under a knowingly incorrect inventor group after the applications naming the correct inventor group were intentionally abandoned by the same prosecuting attorneys—that give rise to Samuel's unclean hands affirmative defense.

Signode also incorrectly tries to pigeonhole Samuel into an inequitable conduct defense, asserting that Samuel's defenses are "plainly intended to sidestep the pleading requirement of

inequitable conduct." Mot., 1, 3. Again, Signode gets the law wrong. As discussed *supra*, § III.B, courts have found that misconduct that includes patent prosecution activities can support a defense of unclean hands separate from inequitable conduct.[5] *See Gilead*, 888 F.3d at 1240-44. Signode's alleged misconduct involved a manipulation of the patent system with an improper assertion of the obtained patents in this litigation which, as demonstrated by case precedent, can constitute both unclean hands and patent misuse. An assertion of inequitable conduct is not required in order to pursue an unclean hands defense.

Signode also asserts that "Samuel's allegations for its defense of unclean hands fails [sic] to allege that Signode has engaged in any egregious conduct." Mot., 3, 6. Yet Samuel disagrees and believes that the alleged conduct is egregious. Properly understood, Signode's arguments are at most directed towards the *merits* of unclean hands, which does not support striking Samuel's pleading at this stage of the case. *See Solis*, 2012 WL 776028, at *7; *Veranda*, 2012 WL 602143, at *3. Moreover, Signode says that "[t]here has been no perjury, no manufacture of false evidence, and no suppression of evidence alleged." Mot., 7. Unclean hands is not limited to such conduct, nor has Samuel been afforded full discovery to date. Signode may pursue summary judgment at the appropriate stage, but not a motion to strike Samuel's pleadings at this early stage.

**B.      Samuel Has Satisfied the Fair Notice Pleading Standard for Patent Misuse, which Can Be Premised on Pre-Issuance Activities**

For reasons similar to unclean hands, Samuel has likewise provided fair notice for its patent misuse affirmative defense. Dkt. 47 at 34-35. Further, contrary to Signode's position, the caselaw makes clear that pre-issuance activities can give rise to patent misuse. *Gabapentin*, 648 F. Supp. 2d at 651-56; *Miracor*, 2024 WL 4487294, at *3.

---

[5] Samuel reserves the right to add (including seeking leave if needed) an inequitable conduct defense in this case.

Signode incorrectly argues that "[f]or patent misuse, Samuel fails to allege any attempt by Signode to broaden or enlarge the scope of the '417 and '430 Patents or any conduct by Signode that has created anti-competitive effects." Mot., 3-6. To the contrary, Samuel has alleged how Signode's misconduct broadened its patent coverage when it obtained the '417 and '430 claims, and that Signode has improperly asserted such wrongfully gained patents in an attempt to exclude Samuel's STL-500 product from the market.[6] Signode's argument that the Amacker publication going abandoned purges misuse (Mot., 5) fails, because the alleged misuse concerns assertion of the improperly obtained '417 and '430 Patents. Therefore, Signode has not met its very high burden to strike Samuel's patent misuse affirmative defense.

### C. Samuel's Improper Inventorship Defense Is Not Coextensive with its Unclean Hands/Patent Misuse Defenses

Signode argues that "even if inventorship is incorrect for the '417 and '430 Patents, that can be corrected," and that "inventorship can be corrected for any reason. 35 U.S.C. § 256," and that "improper inventorship has been found not to 'constitute extreme circumstances' that would support unclean hands." Mot., 2, 7.

Signode misstates the point. Samuel does not allege mere incorrect inventorship in isolation, but rather contends that Signode sought to manipulate the U.S. patent system by pursuing patent claims under an improper inventor group because: (a) in 2019, Signode abandoned the line of patent applications by the Amacker Group who disclosed the claimed subject matter before the Finzo Group; (b) Samuel released the accused STL-500 and Signode wanted to try to exclude it from the market; and (c) Signode used the Finzo Group applications for a second bite at the apple to improperly claim abandoned subject matter (in front of a different U.S. PTO examiner, no less)

---

[6] Signode's argument that 35 U.S.C. § 271(d)(3) "confirms that the mere act of asserting a patent in litigation is not misuse" (Mot., 5) fails, as Samuel has alleged an entire course of conduct.

after giving up the Amacker Group application years earlier.

Further, merely seeking correction of inventorship at this stage would not undo the misconduct that has already occurred.[7] Nor does it suffice that Signode disclosed the Amacker U.S. publication to the U.S. PTO during prosecution of the '417 and '430 Patents (Mot., 1, 7). Signode did not cite the U.S. office action rejections from the Amacker patent application to provide the second examiner with the first examiner's reasoning, nor did Signode alert the U.S. PTO examiner to the inventorship issue. Signode's hypothetical argument that Samuel could have pursued a defense of obviousness-type double patenting if the Amacker patent application had issued as a patent (Mot., 1, n.1) has no relevance here and does not undo the misconduct.[8] While Signode relies on *Bombardier Recreational Prods., Inc. v. Arctic Cat Inc.*, No. CV 12-2706 (JRT/LIB), 2017 WL 5610220 (D. Minn. Nov. 20, 2017), the Court there was deciding summary judgment, not a motion to strike pleadings at this early stage of the case. *See id.* at *1-2.

### D.    Samuel's "Other Equitable Defenses" Language May Be Dropped for Now

Regarding the statement of "other equitable defenses" in Samuel's Twelfth Affirmative Defenses, Samuel does not oppose dropping that particular language, understanding that Samuel reserves the right to later seek leave to amend its affirmative defenses, following the Court's rules, based upon later-discovered facts. *See Town & Country Linen Corp. v. Ingenious Designs LLC*,

---

[7] Moreover, Signode presumes, without any basis, that it can satisfy all the requirements for correcting inventorship, which requires obtaining agreement from all named and purported inventors for any newly asserted correct inventorship. 35 U.S.C. § 256(a); MPEP § 1481.02 ("[c]orrection of inventorship in a patent under 37 CFR 1.324 requires petition of all the parties, i.e., originally named inventors and assignees"). In fact, Signode says that it has no contact information for Mr. Finzo. (Dkt. 46-8 at 5). Also, completely switching inventors in the '417 and '430 Patents would destroy any claim to priority under 35 U.S.C. §§ 119, 120.

[8] Signode does not dispute that Samuel has alleged invalidity under §§ 101 and 102, which includes invalidity for lack of inventorship. Thus, Samuel will already be pursuing discovery related to inventorship, such that striking of Samuel's defenses would do little to streamline the case.

No. 18-CV-5075 (LJL), 2020 WL 3472597, at *15 (S.D.N.Y. June 25, 2020) ("[T]o the extent that the Reserve of Defenses Clause seeks only to reserve the right to seek leave to amend, it should not be stricken even though the language of the reservation is imprecise because Defendant does retain the right to seek leave of the court to amend the[] answer.") (internal quotation marks omitted).

### E.    In the Alternative, Samuel Requests Leave To Amend

Should the Court find merit in Signode's Motion, in the alternative, Samuel asks for leave to amend its Twelfth Affirmative Defenses to the extent necessary. "Federal Rule of Civil Procedure 15(a)(2) provides that '[t]he court should freely give leave when justice so requires[.]'" *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, No. 4:19-CV-00358, 2020 WL 3453717, at *5 (E.D. Tex. June 24, 2020). "Leave should be freely given unless there is an apparent or declared reason, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Bavely, Tr. of AAA Sports, Inc. v. Panini Am., Inc.*, No. 4:22-CV-093, 2022 WL 19076610, at *5 (E.D. Tex. Oct. 19, 2022) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The present action is at a very early stage and an amendment would cause no undue prejudice.

## V.    CONCLUSION

For all of the foregoing reasons, Samuel respectfully asks that Signode's Motion to Strike the Unclean Hands and Patent Misuse affirmative defenses be denied.

Dated: October 17, 2024                              Respectfully submitted,

                                                      */s/Michael R. Houston*

Michael R. Houston (IL Bar No. 6286431)
Pavan K. Agarwal (D.C. Bar No. 459614)
Tiffany K. Sung (CA Bar No. 323077)
Gabriella M. Salek (IL Bar No. 6342686)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4378
Facsimile: (312) 832-4700
Email: mhouston@foley.com
          pagarwal@foley.com
          tsung@foley.com
          gsalek@foley.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***Attorneys for Defendants Samuel, Son & Co., Ltd. and Samuel, Son & Co. (USA) Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 17th day of October 2024.

Dated: October 17, 2024

Respectfully submitted,

*/s/Melissa R. Smith*
Michael R. Houston (IL Bar No. 6286431)
Pavan K. Agarwal (D.C. Bar No. 459614)
Tiffany K. Sung (CA Bar No. 323077)
Gabriella M. Salek (IL Bar No. 6342686)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4378
Facsimile: (312) 832-4700
Email: mhouston@foley.com
        pagarwal@foley.com
        tsung@foley.com
        gsalek@foley.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

***Attorneys for Defendants Samuel, Son & Co., Ltd. and Samuel, Son & Co. (USA) Inc.***

17